601 P.2d 442

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Steven Thomas NOLAN,
Defendant-Appellant.**

**No. 3911.**

Court of Appeals of New Mexico.

Sept. 13, 1979.

Roderick A. Dorr, Terrazas & Dorr, Santa Fe, for defendant-appellant.

Jeff Bingaman, Atty. Gen., Michael A. Kauffman, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

LOPEZ, Judge.

Defendant appeals his conviction of armed robbery in violation of § 30–16–2, N.M.S. A.1978. We affirm.

Defendant presents four points for reversal: (1) the trial court erred in refusing to dismiss the criminal information against defendant; (2) the court erred in refusing to suppress evidence obtained during and after an allegedly illegal arrest of defendant and search of defendant and his vehicle; (3) the court erred in refusing to suppress a photographic identification and subsequent in-court identification of defendant; and (4) the court erred by sentencing defendant in a manner contrary to that authorized by the Legislature. Other issues listed in the docketing statement were not briefed; consequently, on appeal, they are deemed abandoned. *State v. Ortiz*, 90 N.M. 319, 563 P.2d 113 (Ct.App.1977). After stating the relevant facts, we shall discuss each point in the order they appear.

*Facts*

Defendant was charged with armed robbery of an Allsup's convenience store in Eunice, New Mexico. The robbery occurred on April 19, 1977, at approximately 2:40 A.M. An employee of the store, Jo Ann Davis, was present when the robbery occurred. Shortly after its occurrence, she gave a description of the robber to Bill Standifer, an investigating officer with the Eunice Police Department. She described the robber as a male, weighing between 180 and 210 pounds, with a full beard, dark hair and brown eyes. She further told Standifer that the man was between 5′7″ and 5′7½″ in height and was wearing Levis, a shirt and what appeared to be a jacket and ski cap. At the time the robbery occurred, the store was well lighted, and Davis was able to observe the robber at close range. Standifer gave the description to the dispatcher and instructed her to give it to Hobbs and Jal, New Mexico, and Andrews, Texas.

At approximately 4:37 o'clock that same morning, William S. Barr, an officer with the Andrews Police Department, was on patrol in Andrews. He had previously received a report of an armed robbery in Eunice and a description of the suspect. The suspect was described as a white male with dark hair, full beard and mustache. In addition, the suspect was reported as being 5′10″ in height, weighing between 180 and 200 pounds and wearing a dark hat, possibly a toboggan type, and blue jeans. No description of a vehicle was given. Shortly after receiving the report, Barr observed a vehicle coming from the direction of Eunice. It is thirty-seven miles from Eunice to Andrews. This vehicle was driven by defendant.

Barr stopped his patrol vehicle, and, as defendant passed him, Barr failed to see any visible license plate on defendant's vehicle. Barr observed defendant not only when defendant passed but also when defendant stopped at a red traffic light. Defendant had long black or dark hair and a full beard. After stopping at the traffic light, Barr followed defendant's vehicle and radioed for another unit to back him up. Lieutenant Yarbrough and Officer Ronnie Cowan, of the Andrews Police Department, were in the other unit and had also received the dispatch from Eunice. Shortly after being radioed, Yarbrough and Cowan approached Barr's vehicle from behind, passed it and then overtook defendant's vehicle. When Yarbrough and Cowan were parallel to defendant's vehicle, Barr turned on his emergency equipment, and, after observing defendant, Yarbrough radioed Barr to advise him that defendant was probably the suspect who had committed the robbery in Eunice. At trial, Barr testified that he stopped defendant because he could see no visible license plate on defendant's vehicle and because defendant fit the description of the suspect which he had received from Eunice. Cowan testified that defendant was arrested because he was suspected of committing armed robbery. The bases for the suspicion was the Eunice description,

the time of day and the fact that defendant's vehicle was the only vehicle on the street and that it was coming from the direction of Eunice. Following the arrest, defendant and his vehicle were searched. During this search, the following items were seized and later admitted into evidence at trial: a hat that defendant was wearing, a shotgun, shotgun shells, a large paper sack with the name "Furr's" on it, and a certain amount of money.

Shortly after defendant was arrested, the Andrews Sheriff's Department notified the Eunice police that it had in custody a suspect fitting the description of the person who had robbed the Allsup's convenience store. Sergeant Tommy Joe Thompson of the Eunice Police Department and Deputy Tommy Crowe of the Eunice Sheriff's Department then took Jo Ann Davis to Andrews in order to determine if she could identify the suspect. When Davis arrived at Andrews Sheriff's Department, defendant's driver's license and personal effects, a Furr's paper sack, some bullets and beer were on a counter. Upon seeing the photograph on the driver's license, Davis readily identified it as a photograph of the robber. At trial, Davis testified that the personal effects, sack and bullets played a part in her identification. Subsequent to this identification, a photograph of defendant was shown to Davis. She again identified it as a photograph of the robber. Davis also identified defendant at trial.

After defendant waived extradition, Harlon Howell, Chief of the Eunice Police Department, and Sergeant Thompson went to Andrews in order to bring defendant back to Eunice. Before leaving Andrews, Chief Howell read defendant his *Miranda* rights. On the trip back to Eunice, defendant made certain inculpatory statements concerning the robbery of the Allsup's store. These statements were later admitted into evidence at trial.

### Dismissal of Criminal Information

█ Defendant argues that the trial court committed a jurisdictional error by refusing to dismiss the criminal information against him. Defendant claims that the information should have been dismissed because his arrest was illegal. Although not specifically stated, defendant's argument appears to be that an illegal arrest is a bar to a court's jurisdiction over the person illegally arrested. At this point, we assume, but do not decide, that defendant's arrest was illegal. However, despite this assumption, we conclude that defendant's argument is without merit.

When faced with a similar argument, this Court in *State v. Halsell*, 81 N.M. 239, 465 P.2d 518 (Ct.App.1970), stated:

> The courts of this and many other jurisdictions have—in direct appeals, habeas corpus proceedings, and post-conviction proceedings—repeatedly held that the jurisdiction of a court to try a person accused of crime, or to accept his plea of guilty, is not divested, nor his conviction vitiated, because his arrest was irregular or unlawful. (Cites omitted.)

*Id.* at 240, 465 P.2d at 519; *accord, City of Roswell v. Martinez*, 82 N.M. 708, 487 P.2d 136 (Ct.App.1971). Accordingly, based upon this statement, we hold that the trial court did not commit a jurisdictional error by refusing to dismiss the criminal information against defendant.

In arriving at this holding, we are aware that our Supreme Court in *Benally v. Marcum*, 89 N.M. 463, 553 P.2d 1270 (1976), has questioned the validity of cases such as *State v. Halsell, supra, Frisbie v. Collins*, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952), and *Ker v. Illinois*, 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421 (1886), and their doctrine that "it is no defense to a criminal prosecution that the defendant was illegally brought before the court." *Benally, supra*, 89 N.M. at 466, 553 P.2d at 1273. As grounds for this questioning, the court relied upon the decisions rendered by the United States Supreme Court in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *Silverman v. United States*, 365 U.S. 505, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961); *Rochin v. Califor-*

nia, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952); *McNabb v. United States*, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943); Justice Brandeis's dissenting opinion in *Olmstead v. United States*, 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944 (1928); and an opinion written by the Second Circuit of the Court of Appeals in *United States v. Toscanino*, 500 F.2d 267 (2d Cir. 1974). However, the court in *Benally, supra*, failed to note that the United States Supreme Court, as recently as 1975, cited *Frisbie v. Collins, supra*, and *Ker v. Illinois, supra*, with approval and stated that ". . . we [do not] retreat from the established rule that illegal arrest or detention does not void a subsequent conviction." *Gerstein v. Pugh*, 420 U.S. 103, 119, 95 S.Ct. 854, 865, 43 L.Ed.2d 54 (1975). Therefore, because of this language, we conclude that *Benally, supra*, does not apply to the case at hand.

### Suppression of Evidence

Defendant argues that the court erred in refusing to suppress evidence obtained during and after an allegedly illegal arrest of defendant and search of defendant and his vehicle. The incriminating statements made by defendant to the Eunice policemen on the trip back to Eunice are included in those items which defendant contends were improperly admitted into evidence. Defendant bases his contention of error on the assertion that, because his arrest was illegal, any items seized as a result of this arrest were also illegally obtained and should, therefore, have been suppressed. We disagree.

■ It is undisputed that the arresting officers did not possess a warrant for defendant's arrest. Defendant claims, however, that his arrest was illegal because the arresting officers did not have the necessary probable cause to arrest him. The legality of an arrest is determined by the law of the jurisdiction where the arrest was affected. *State v. Coleman*, 579 P.2d 732 (Mont.1978); see *Miller v. United States*, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958). In the present case, defendant was arrested in Andrews, Texas. Accordingly, Texas law should be applied to determine the legality of defendant's arrest. The court in *Brown v. State*, 481 S.W.2d 106 (Tex.Cr.App.1972), stated the standard for determining whether probable cause exists for an arrest:

> Probable cause for an arrest exists where, at that moment, the facts and circumstances within the knowledge of the arresting officer and of which he has reasonably trustworthy information would warrant a reasonable and prudent man in believing that a particular person has committed or is committing a crime. .

*Id.* at 110.

■ The following facts and circumstances were within the knowledge of the officers arresting defendant. Barr received a radio dispatch from the Eunice Police Department concerning an armed robbery of an Allsup's convenience store in Eunice, New Mexico. This dispatch was received shortly after the robbery occurred. It described the suspect as a white male with dark hair, full beard and mustache. In addition, the suspect was reported as being 5'10" in height, weighing between 180 and 200 pounds and wearing a dark hat, possibly a toboggan type, and blue jeans. This description was based upon a report given by an eyewitness to the crime. At approximately 4:37 o'clock in the morning, Barr observed defendant's vehicle coming from the direction of Eunice. It is thirty-seven miles from Eunice to Andrews. Barr was able to observe defendant not only when defendant passed him on the road but also when defendant stopped at a red traffic light. Defendant had long black or dark hair and a full beard. Yarbrough and Cowan also received the dispatch from Eunice. They also were able to observe defendant as they passed his vehicle. Barr later testified that he stopped defendant because defendant fit the description of the suspect which he had received from Eunice. Cowan testified that defendant was arrested because he was suspected of committing armed robbery. The basis for this suspicion was the Eunice description, the time of day and the fact that defendant's vehicle was the only vehicle on the street and that it was coming

from the direction of Eunice. We rule that these facts and circumstances are sufficient to establish probable cause for defendant's arrest. See *Guzman v. State*, 521 S.W.2d 267 (Tex.Cr.App.1975); *Branch v. State*, 447 S.W.2d 932 (Tex.Cr.App.1969). Accordingly, we further rule that defendant's arrest was not illegal.

In arriving at these rulings, we are aware that defendant relies principally on *Brown v. State, supra,* as support for his claim that his arrest was illegal because the arresting officers did not have the necessary probable cause to arrest him. However, in that case, the description given by a witness to the robbery included only approximate height and weight and race. In addition, the arrest of defendants occurred approximately twenty-four hours later in a large city. In the present case, the description given by Davis included defendant's hair coloring, clothing and the fact that he had a beard. Furthermore, defendant was arrested shortly after the robbery, at an early morning hour and on a road leading from the town where the robbery occurred. Given these distinguishing facts, we conclude that *Brown v. State, supra,* is not controlling. We also conclude that, under the facts of the case at hand, defendant's argument based on *State v. Gorsuch*, 87 N.M. 135, 529 P.2d 1256 (Ct.App.1974), is without merit.

Based upon our ruling that defendant's arrest was not illegal, we hold that the court properly admitted into evidence the items seized from defendant's vehicle. The search which uncovered these items can be justified either as a search incident to an arrest based on probable cause to arrest or a search based on probable cause to search. *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *State v. Luna*, 91 N.M. 560, 577 P.2d 458 (Ct.App.), *cert. denied*, 91 N.M. 610, 577 P.2d 1256 (1978); *State v. Vallejos*, 89 N.M. 23, 546 P.2d 871 (Ct.App.1976). In addition, since we have already ruled that defendant's arrest was legal, defendant's argument that his incriminating statements should have been suppressed as evidence obtained directly from an illegal arrest is without merit. We, therefore, hold that the trial court properly admitted these statements into evidence.

*Suppression of Identifications*

Defendant contends that the court erred in refusing to suppress a photographic identification and subsequent in-court identification of defendant. The test in this jurisdiction with respect to suppression of out-of-court photographic identifications is whether the " 'photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.' " *State v. Baldonado*, 82 N.M. 581, 582, 484 P.2d 1291, 1292 (Ct.App.1971); *accord, State v. Gilliam*, 83 N.M. 325, 491 P.2d 1080 (Ct. App.1971).

■ After reviewing the record, we conclude that the identification procedure in the present case was such that it did give rise to a substantial likelihood of irreparable misidentification. Davis was not shown an array of photographs; rather she was shown only one photograph which was a picture of defendant. In addition, defendant's driver's license which contained the photograph that Davis identified as the robber was in close proximity to other items connected with the robbery. Davis later testified that this fact played a part in her identification. Moreover, Davis knew she was going to Andrews for the specific purpose of determining whether she could identify the suspect in custody. In this situation, to show a witness only one photograph cannot be justified. Finally, the record does not disclose the existence of any urgency which could justify such a procedure. Accordingly, we conclude that the circumstances surrounding Davis's photographic identification were impermissibly suggestive.

However, despite this conclusion, we do not agree with defendant's contention that the photographic identification should have been suppressed. Our disagreement is based upon the United States Supreme Court decision in *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). The issue in this case was "whether the Due Process Clause of the Fourteenth Amend-

ment compels the exclusion, in a state criminal trial, apart from any consideration of reliability, of pretrial identification evidence obtained by a police procedure that was both suggestive and unnecessary." *Id.* at 99, 97 S.Ct. at 2245. In arriving at its holding, the Court discussed its decision in *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), and stated that the central question was " 'whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive.' " 432 U.S. at 106, 97 S.Ct. at 2249. Based partly upon an analysis of this question, the Court held:

> We therefore conclude that reliability is the linchpin in determining the admissibility of identification testimony for both pre- and post-*Stovall* confrontations. The factors to be considered are set out in *Biggers*. 409 U.S., at 199–200, 93 S.Ct. 375. These include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.

*Id.* at 114, 97 S.Ct. at 2253.

Guided by this holding, we rule that Davis's photographic identification was reliable even though the procedure used was impermissibly suggestive. The record discloses that, when the robbery occurred, the store was well lighted and Davis was able to view the robber at close range. Additionally, there is nothing to indicate that Davis's degree of attention was impaired. This latter fact is supported by the accuracy and detail of Davis's prior description of the robber, which was a factor in leading to the eventual arrest of defendant. Moreover, when confronted with the photographs of defendant, Davis displayed no doubt, but readily identified him as the robber. Finally, only a few short hours elapsed between the crime and Davis's identification. Under these circumstances and weighed against the corrupting effect of the suggestive identification itself, we hold that the court properly admitted testimony concerning Davis's photographic identification of defendant. In addition, based upon the above facts concerning the reliability of Davis's identification, we rule that Davis's in-court identification was sufficiently independent of and not tainted by her extra-judicial identification so as to require its exclusion. *State v. Torres*, 81 N.M. 521, 469 P.2d 166 (Ct.App.), *cert. denied*, 81 N.M. 506, 469 P.2d 151 (1970).

*Defendant's Sentence*

■ Defendant argues that the court erred by sentencing him in a manner contrary to that authorized by the Legislature. We agree. Defendant pleaded guilty to burglary, a fourth degree felony, in violation of § 30–16–3, N.M.S.A.1978. Defendant was found guilty of armed robbery, a second degree felony, in violation of § 30–16–2. By a special finding, the jury found that defendant used a firearm in commission of the armed robbery. Defendant was also found in contempt of court. Defendant was then sentenced to not less than one year. nor more than five years on the burglary charge. Section 31–18–3 D, N.M.S.A. 1978. Defendant was also sentenced to not less than fifteen nor more than fifty-five years on the armed robbery charge. This sentence was to run consecutively with the burglary sentence. Sections 31–18–3 B and 31–18–4, N.M.S.A.1978. After serving these sentences, defendant was to return to the Lea County Jail to serve thirty days for contempt. After serving all of these sentences, he was to be placed on probation for a period of three years.

Section 31–18–1, N.M.S.A.1978, provides:

> No person convicted of a crime under the Criminal Code shall be sentenced except in accordance with the Criminal Code.

In addition, § 31–20–5, N.M.S.A.1978, states:

> When a person has been convicted of a crime for which a sentence of imprisonment is authorized, and *when the district court has deferred or suspended sentence,*

it shall order the defendant to be placed on probation for all or some portion of the period of deferment or suspension if the defendant is in need of supervision, guidance or direction that is feasible for the probation service to furnish; provided, however, the total period of probation shall not exceed five years. (Emphasis added.)

A court may sentence a defendant only within those bounds prescribed by law. *See State v. Hovey*, 87 N.M. 398, 534 P.2d 777 (Ct.App.1975). The court in the present case ordered defendant placed on probation without deferring or suspending any of his sentences. Consequently, this action was not within the bounds prescribed by law. Section 31–20–5. We, therefore, hold that the probationary part of defendant's sentence is void. *See Sneed v. Cox*, 74 N.M. 659, 397 P.2d 308 (1964).

Based upon this holding and the foregoing, we affirm defendant's conviction and remand this cause with instructions to delete, the probationary period from the trial court's judgment and sentence. *Sneed v. Cox, supra.*

IT IS SO ORDERED.

WALTERS, J., specially concurring.

ANDREWS, J., concurs.

WALTERS, Judge (specially concurring).

I concur in the result reached by the majority in this matter; but I am unwilling to assume the arrest was illegal. The lack of a license plate and the arresting officer's recognition of defendant as the person described by the dispatcher, plus the other noted circumstances, supplied grounds for arrest. Dismissal of the indictment on the basis of illegal arrest was properly denied. Thus the discussion of the effect of *Benally v. Marcum, supra* (with which discussion I also do not agree), is unnecessary.

The matter must be remanded for correction of the sentences imposed.