622 P.2d 283
**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Eric WHEELER, a/k/a Roger O. Edwards, a/k/a Patrick A. Jordan, a/k/a Roger Dale Shipman, Defendant-Appellant.**

No. 4585.

Court of Appeals of New Mexico.

Dec. 18, 1980.

Thomas Joseph Horne, Albuquerque, for defendant-appellant.

Jeff Bingaman, Atty. Gen., Art Encinias, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

HENDLEY, Judge.

Convicted of one count of fraud under $100.00 contrary to § 30–16–6, N.M.S.A. 1978, four counts of fraud over $100.00 contrary to § 30–16–6, *supra*, and one count of removal of encumbered property contrary to § 30–16–18, N.M.S.A.1978, defendant appeals. He contends (1) the trial court erred in concluding that the husband-wife privilege, N.M.R.Evid. 505, N.M.S.A.1978, could not be claimed by defendant; (2) the trial court erred in denying defendant's motion for suppression of extra judicial photographic identifications and the subsequent in-court identifications of the defendant by State's witnesses; and (3) the trial court erred in issuing instruction No. 11 and refusing defendant's tendered instruction, N.M.U.J.I.Crim. 1.08, N.M.S.A.1978.

Defendant met Ms. Shipman in Dallas, Texas, around April 1, 1979. They lived together there and, according to Ms. Shipman, became common-law husband and wife. They went to Clovis, New Mexico, around August 1, 1979.

The State's key witness was Ms. Shipman. She testified that while in New Mexico she opened a bank account with $50.00. That same evening, she purchased several money orders at various Allsup's Convenience Stores. These were paid for by checks drawn on the newly opened account. The checks exceeded the balance of $50.00. These money orders were cashed at various

locations during the following days. Ms. Shipman also testified to defendant's purchase of a pickup truck (the subject matter of the § 30–16–18 count).

Ms. Shipman testified that she committed the above mentioned acts, and others, under duress. Throughout her testimony, she described threats made to her by defendant and acts of violence perpetrated by defendant upon her and her three children. She also testified that defendant threatened many times to kill her, her three boys and other members of her family.

Defendant was tried in March, 1980. At that time, N.M.R.Evid. 505, N.M.S.A.1978, stated a follows:

> *Rule 505. Husband-wife privileges.*
>
> .   .   .   .   .
>
> (b) *General rule of privileges.* (1) An accused spouse in a criminal proceeding has a privilege to prevent the other spouse from testifying against the accused.
>
> (2) A person has a privilege in any proceeding to refuse to disclose and to prevent another from disclosing a confidential communication by the person to that person's spouse while they were husband and wife.
>
> .   .   .   .   .
>
> (d) *Exceptions.* There is no privilege under this rule: (1) in proceedings in which one spouse is charged with a crime against the person or property of the other spouse or a child of either, or with a crime against the person or property of a third person *committed in the course of committing a crime against the other spouse*[.] (Emphasis added.)

The amendment to Rule 505 excluding subsection (b)(1) became effective July 1, 1980. *See,* 1980 Supp.

At the beginning of Ms. Shipman's testimony, defendant objected on the basis of the husband-wife privilege. Defendant sought to prevent further testimony by the wife in accordance with Rule 505(b)(1). For purposes of the objection, the trial court assumed that defendant and Ms. Shipman had a common-law marriage under Texas law, but concluded that the privilege was unavailable to defendant on the basis of subsection (d)(1). The trial court concluded that the crimes for which defendant was on trial were committed in the course of a crime committed against Ms. Shipman—that crime being extortion. On that basis, Ms. Shipman was permitted to testify against defendant.

■ Defendant's resort to the privilege and the trial court's assumption that defendant and Ms. Shipman had a common-law marriage was proper. *See, Matter of Estate of Willard,* 93 N.M. 352, 600 P.2d 298 (Ct.App.1979). Her testimony was uncontroverted. Ms. Shipman testified that she and defendant did have a common-law marriage. Under Texas law, a common-law marriage exists where: (1) there is an agreement presently to become husband and wife; (2) the man and woman live together pursuant to the agreement; and (3) there is a holding out of each other to the public as husband and wife. 1 V.T.C.A. Family Code, § 1.91 (1975). The agreement to be husband and wife, which can be expressed or implied, may be implied by showing the existence of the second two elements. 38 Tex.Jur.2d, Marriage, § 15. The trial court properly assumed that defendant and Ms. Shipman were husband and wife.

■ For the purposes of this opinion, we assume that the trial court was correct in holding that Ms. Shipman was compelled to open the bank account, to purchase the money orders and to write checks because of defendant's direct threats. *See,* § 30–16–9, N.M.S.A.1978. We make this assumption even though Ms. Shipman pled guilty to one count of uttering a worthless instrument—duress being a defense. *See, Esquibel v. State,* 91 N.M. 498, 576 P.2d 1129 (1978).

Section 30–16–9, *supra,* states in part:

> Extortion consists of *the communication or transmission of any threat to another* by any means whatsoever *with intent* thereby to wrongfully obtain anything of value or *to wrongfully compel the person threatened to do* or refrain

from doing *any act against his will.* (Emphasis added.)

The crime of extortion is complete when a person makes the threat, intending to compel the victim to do something he would not have done. N.M.U.J.I.Crim. 16.32, N.M.S.A. 1978; *State v. Barber*, 93 N.M. 782, 606 P.2d 192 (Ct.App.1979). The issue is then whether the fraudulent acts committed by defendant were "committed in the course of committing" extortion against Ms. Shipman. "[I]n the course of" has been defined as referring to the time, place and circumstances of the event. *See, Thigpen v. County of Valencia*, 89 N.M. 299, 551 P.2d 989 (Ct.App.1976). It is another way of saying "during". *See*, Black's Law Dictionary 4th Ed., "Course of Employment", p. 424 (1951).

▪ Applying the foregoing definitions, the next question is whether the acts of fraud were committed "in the course of committing a crime against the spouse." We think not. Once the threats were made, the crime of extortion was complete. The crime of extortion was not being committed when Ms. Shipman opened the bank account or obtained funds from Allsup's. Crimes committed against third persons were not committed "during" the crime against Ms. Shipman. The trial court erred in admitting the testimony of Ms. Shipman.

Since we reverse defendant's conviction because of the foregoing and the cause must be retried, we discuss defendant's pretrial motion to suppress certain photographs because they were impermissibly suggestive when shown to the witnesses. The trial court found "that the record is totally devoid of any impermissibly suggestive showing of photographs of the Defendant to these three witnesses."

The test in New Mexico with respect to suppression of out-of-court photographic identifications is two-prong. *State v. Baldonado*, 82 N.M. 581, 484 P.2d 1291 (Ct.App. 1971), quoting from *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), followed in *State v. Nolan*, 93 N.M. 472, 601 P.2d 442 (Ct.App. 1979).

With the foregoing test, we discuss each of the witnesses who were shown defendant's picture:

*Merle Bright.* Mr. Bright, an employee of 4–Lane Auto Sales, sold the pickup truck to defendant and Ms. Shipman. He was shown pictures of defendant on two occasions prior to signing an affidavit for arrest on September 16, 1979. This was the week before the suppression hearing. Mr. Bright was not shown a picture of anybody else on either occasion. Mr. Bright testified that viewing the pictures of defendant in September, 1979, did refresh his memory as to defendant's identity and did help him in determining what defendant looked like. Mr. Bright said the same was true of his identification of defendant from the photograph shown the week before trial; however, Mr. Bright did identify defendant prior to that at a deposition. While defense counsel did elicit testimony from Mr. Bright that he knew that the person at the deposition had to be the defendant and that the previous showing of defendant's picture may have helped him identify defendant, Mr. Bright testified that he did not think he was relying on the photographs when he identified defendant. Mr. Bright said that he could remember defendant from their transactions and that he felt "very strongly" that he could identify defendant if he had not been shown the photographs.

*Betty Wagner.* Ms. Wagner testified that she was shown pictures of defendant a few days prior to the motion to suppress hearing. Ms. Wagner identified the pictures that were shown to her as mug shots with arrest numbers. Ms. Wagner, an employee of Citizen's Bank at Texico, opened the checking account for Ms. Shipman. She spoke with defendant at that time. Ms. Wagner was fairly firm at the suppression hearing in her belief that the pictures did not aid her in her identification of defendant and that they did not refresh her memory.

*Don Boyd.* Mr. Boyd, an employee of 4–Lane Auto Sales, saw a picture of defendant in September, 1979, at the Sheriff's Department. Mr. Boyd saw defendant on

two occasions. He was certain that the photographs did not help in his identification of defendant and felt that he could have identified defendant without having seen the photographs.

*Jim Walker.* Mr. Walker, an employee of Citizen's Bank, was not able to identify defendant prior to being shown photographs of him the week before trial. However, Mr. Walker was not asked to identify defendant at the suppression hearing.

The two photographs shown to the witnesses a few days before the suppression hearing were police photographs showing defendant with a rather large police identification tag hanging from his neck. *See, State v. Gutierrez,* 93 N.M. 232, 599 P.2d 385 (Ct.App.1979), for use of police photographs at trial.

Defendant was apprehended in late September, 1979, and was in jail from that time to the date of the hearing on his motion to suppress on March 24, 1980. The two photographs of the defendant were shown to the witnesses the week before the suppression hearing, which was held the morning before trial.

In *Nolan, supra,* this Court concluded that there was a substantial likelihood of irreparable misidentification. This conclusion was based upon the following facts: the witness was not shown an array of photographs; the witness was able to view the other items belonging to the suspect at the time she was shown the photograph of the suspect; the witness testified that those items played a part in her identification; and the witness knew she was going to Andrews for the purpose of determining if defendant could identify the suspect. This Court concluded that under these circumstances, to show the witness only one photograph could not be justified. No urgency existed which might justify the procedure.

■ Upon concluding that the identification procedure was "impermissibly suggestive", *Nolan, supra,* requires the trial court to engage in a second determination. This second prong of the analysis focuses on the issue of whether defendant will be denied due process of law if evidence of the out-of-court identification is introduced at trial or if the identifying witness is allowed to identify defendant at trial.

The issue in this case [is] "whether the Due Process Clause of the Fourteenth Amendment compels the exclusion, in a state criminal trial, apart from any consideration of reliability, of pretrial identification evidence obtained by a police procedure that was both suggestive and unnecessary." [*Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977)] ... [T]he central question [is] " 'whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive.' " [*Id.,* citing *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).] *Nolan, supra.*

*Manson v. Brathwaite, supra,* held:

We therefore conclude that reliability is the linchpin in determining the admissibility of identification testimony for both pre- and post-*Stovall* confrontations. The factors to be considered are set out in *Biggers.* (Citations omitted.) These include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.

■ The procedure of showing only one photograph (here two) of the defendant to a victim or witness is suspect in and of itself. *State v. Gilliam,* 83 N.M. 325, 491 P.2d 1080 (Ct.App.1971). In the instant case, there was no apparent reason for not having a lineup. Certainly, ample time existed— over four months. Further, the trial court did not reach the second prong of the photograph identification test, as set forth in *Manson, supra.*

We have considered defendant's other arguments and find them to be without merit. Accordingly, the cause is reversed and re-

manded and defendant is granted a new trial without the testimony of Ms. Shipman. Prior to that trial, the trial court shall hold a hearing, based upon the evidence and testimony adduced at the motion to suppress hearing, to determine the photographic identification in light of the second prong of the test set forth in *Nolan, supra,* as announced in *Manson, supra.*

IT IS SO ORDERED.

HERNANDEZ and LOPEZ, JJ., concur.