648 P.2d 807
**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**William PADILLA, Defendant-Appellant.**

**No. 5577.**

Court of Appeals of New Mexico.

June 8, 1982.
Certiorari Denied July 19, 1982.

Jeff Bingaman, Atty. Gen., Eddie Michael Gallegos, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Shannon Robinson, Hank, Farrah & Associates, Albuquerque, for defendant-appellant.

## OPINION

WALTERS, Chief Judge.

Defendant was convicted under § 30–19–3B and C, N.M.S.A.1978, of commercial gambling. He contends on appeal that transcripts of taped telephone conversations were admitted without proper foundation; that evidence of an incorrect translation of one of the tapes by a State's witness was improperly withheld from the jury; and that the court imposed a sentence not authorized by § 31–20–6, N.M.S.A.1978. Another issue raised in the docketing statement was not briefed and is deemed abandoned. *State v. Gonzales,* 96 N.M. 556, 632 P.2d 1194 (Ct.App.1981).

## 1. Admissibility of State's Exhibits.

An inspector for the New Mexico Alcoholic Beverage Commission and a State Police officer testified that they listened to taped conversations at the offices of the Organized Crime Commission and identified one of the speakers on the various tapes as defendant. They knew before hearing the tapes that they were expected to identify defendant's voice as one of the persons recorded on the tapes; they were given typewritten transcripts of the conversations which identified defendant by name as one of the speakers. They followed the transcripts as they listened to the tapes. Both the tapes and the transcripts were admitted at trial.

In his official capacity, the inspector had known defendant for fourteen years, and he had spoken with him fifty to one hundred times, perhaps twenty to twenty-five times over the telephone. The police officer, who had monitored several of the wiretapped conversations, had an acquaintanceship with defendant for eleven years. He had personally spoken with defendant twenty to thirty times during that period. Both witnesses positively identified defendant's voice on the tapes.

It was shown on cross-examination that those two witnesses had been called by someone who identified himself as defendant on the weekend before the trial. They testified that they were not sure that the voice of the caller was defendant's.

Rules 901(b)(5) and (6), N.M.R.Evid., N.M. S.A.1978, provide illustrations of the kinds of identification evidence that may be made admissible upon satisfactory authentication. Opinions relating to voice identification or identification of telephone conversations are covered by those rules. Defendant acknowledges that the federal courts have permitted testimony of voice identifications under its comparable Rule 901, Fed.R.Evid. (28 U.S.C.A.). Several decisions have held that once a minimal showing has been made that the witness has some familiarity with the voice he identified, his identification testimony may be admitted and the jury may then determine the weight to be accorded to that testimony. *E.g., United States v. Cuesta*, 597 F.2d 903 (5th Cir. 1979); *United States v. Kirk*, 534 F.2d 1262 (8th Cir. 1976); *United States v. Knohl*, 379 F.2d 427 (2d Cir. 1967). One state court has said:

> A witness need not be an expert in voice identification to testify as to the identity of the defendant.... It is the general rule that testimony by a witness that he or she recognized the accused by his voice is admissible in evidence, provided only that the witness has some basis for comparison of the accused's voice with the voice which he or she identifies as the accused's.... The completeness of the identifications goes to the weight of the evidence and not its admissibility. Mere hesitancy or uncertainty on the part of a witness in identifying an accused by voice recognition affects only the weight and not the admissibility of the testimony.

*State v. Weigel*, 228 Kan. 194, 195, 612 P.2d 636 (1980). *Accord, United States v. Thomas*, 586 F.2d 123 (9th Cir. 1978). The degree of familiarity with the voice identified in *Thomas, supra*, was considerably smaller than in the case now before us, the witness there having conversed with the accused on only three occasions. In *United States v. Smith*, 635 F.2d 716 (8th Cir. 1980), the identifying witness had heard defendant's voice only twice. Nevertheless, in both cases the witnesses were permitted to give voice identification testimony concerning taped conversations of the defendants.

Defendant objected at trial to evidence regarding the witnesses' recognition of defendant's voice on the tape recordings. On appeal, he objects to the admission of the transcripts of the taped conversations on grounds that the procedure of the identifications was impermissibly suggestive—"worse than a one-man lineup." There is no contention that either the tapes or the typed transcripts were incomplete or inaccurate; the sole question is whether the method of voice identification was so improper that the identification testimony should have been suppressed.

The New Mexico test for suppressing an out-of-court identification, adopted from *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), does not rest entirely on whether the identification procedure was impermissibly suggestive. Rather, the totality of the circumstances leading to reliability of the identification is to be weighed against the corrupting effect of the suggestive identification. This rule and the indicia of reliability are set forth in *State v. Nolan*, 93 N.M. 472, 601 P.2d 442 (Ct.App.1979), and were followed in *State v. Wheeler*, 95 N.M. 378, 622 P.2d 283 (Ct.App. 1980). The same rules should apply in identifying the voice of an accused.

The procedures for voice identification in the instant case closely parallel those followed in *United States v. Basey*, 613 F.2d 198 (9th Cir. 1979), and *United States v. Pheaster*, 544 F.2d 353 (9th Cir. 1976), where the identifying witnesses had been alerted to the identity of the person whose voices they were asked to recognize. In *Pheaster, supra*, the court found the procedure "undeniably suggestive," but nevertheless reliable "under the attendant circumstances." (544 F.2d at 371.) Similarly, in *Basey, supra*, the agent was asked to listen to and identify voices on a tape he

knew was to become evidence in the trial against defendant. He also knew it was likely that defendant's voice was on the tape, and he knew that a name used in the recorded conversations was defendant's nickname. Other evidence showing the reliability of the agent's identification was held sufficient to overcome the suggestiveness of the procedure used.

The elements of reliability in this case, through the evidence of the witnesses referred to as well as from testimony of other witnesses concerning the discernible pattern of business conducted over the identified telephone and the methods used for placing the wiretaps, monitoring, recording, and transcribing the conversations (see Annot., 79 A.L.R. 3rd 79 et seq. (1977), Sufficiency of Identification of Participants as Prerequisite to Admissibility of Telephone Conversation in Evidence), were well established.

■ The court did not abuse its discretion in admitting the evidence complained of in view of the totality of the circumstances and the witnesses' familiarity with and unequivocal recognition of defendant's voice. *State v. Wesson*, 83 N.M. 480, 493 P.2d 965 (Ct.App.1972).

## 2. Exclusion of impeaching evidence.

On the weekend before trial, someone called the liquor inspector whose testimony we have discussed above, and identified himself as defendant. That conversation was taped and played by defendant during a time the jury was excused, in defendant's cross-examination effort to test the witness's credibility regarding his ability to identify defendant's voice. The witness interpreted his response in Spanish during a part of the conversation as saying that he did not recognize the caller's voice. An official court interpreter said that the witness said, instead, "Oh, yes, I recognize your voice." The court refused to allow the discrepancy in interpretation to be brought before the jury. The defendant did not offer the tape into evidence.

■ Defendant argues here that he was "denied due process of law when the court excluded the tape * * * and the translation of the Spanish phrase into English." That argument is different from what was presented at trial: he argued there that the inspector's testimony should be excluded because the tape and the interpreter's translation of the Spanish phrase proved the unreliability of the inspector's voice identification.

Contrary to defendant's appellate contention, a request to exclude the inspector's testimony did not "put the court on notice" that the tape and its variant interpretation were being offered for admission. The issue was not preserved for review. *State v. White*, 94 N.M. 687, 615 P.2d 1004 (Ct.App. 1980); N.M.R.Crim.App.P. 308, N.M.S.A. 1978.

## 3. The sentence imposed.

Defendant, convicted of a fourth degree felony bearing the penalty of eighteen months' maximum imprisonment, received a deferred sentence of five years, probation for five years, and the obligation to pay prosecution costs of $2,500 at the rate of $500 per month. He was ordered further to perform sixteen hours of community service per week during his first two years of probation and eight hours per week for the last three years. Defendant objects to the sentence on the grounds that § 31–20–6, N.M. S.A.1978, limits costs of probation to actual costs not to exceed $200 annually; that § 31–20–7, N.M.S.A.1978, prohibits a period of deferment beyond the maximum term of imprisonment which could have been imposed; and that the community service ordered to be performed is not authorized by law.

*State v. Gonzales*, 96 N.M. 556, 632 P.2d 1194 (Ct.App.1981), held that an identical provision in § 31–20–7A, *supra*, which refers to suspension (rather than deferment) of sentence, limits the period of probation to the maximum period for which imprisonment could have been imposed. That mandatory reading applies equally to the period of probation which may be imposed on a deferred sentence. Section 31–20–7B, N.M. S.A.1978.

The State is in error in pointing to § 31–20–6D, N.M.S.A.1978 (1981 Repl.), which sets the probation limitation at

a term not to exceed that of the maximum sentence * * * for the * * * crime for which he was convicted; provided that * * * this limitation shall not apply [to third or fourth degree felony convictions] and the term of the probation shall not exceed five years * * *.

■ The statute's proviso in subsection D was added in 1981. Laws 1981, ch. 285, § 2. The offense for which defendant was convicted was committed in 1980. The proviso thus had no application to defendant; only the first portion of § 31–20–6D, limiting probation to not more than the maximum sentence allowable, was in effect at the time of the offense. The probation period imposed was excessive by forty-two months. *State v. Crespin*, 96 N.M. 640, 633 P.2d 1238 (Ct.App.1981).

■ With respect to the community service ordered as a condition of probation, we have said in *State v. Gardner*, 95 N.M. 171, 619 P.2d 847 (Ct.App.1980), that if, in accordance with § 31–20–6, *supra*, the conditions are "relevant to the offense for which probation was granted," and "reasonably related to [defendant's] rehabilitation," the court has authority to order such conditions. No one would dispute that criminal activity is anti-social by nature; ergo, community service is not unrelated to the offense for which defendant was given probation. An interesting article on judicially-imposed community service as a condition of probation, and perhaps some rarely considered ramifications of its application, may be found at 29 Buffalo L.Rev. 425 (1980), particularly at pages 461–486.

Defendant lastly argues that the costs assessed against him, payable at the rate of $500 per month, were improperly charged, and that costs of probation could not exceed $200 per year under § 31–20–6A, N.M.S.A. 1978, in effect at the time of the offense. The record on this specific portion of the sentence negates the arguments presented here.

The imposition of $2,500 in payment of a portion of the State's preprosecution investigatory costs was invited by defense counsel when, by letter, he asked the trial court to sentence this defendant consistently with the sentences imposed on other individuals arrested at the same time and convicted for commercial gambling offenses in other divisions of the Second Judicial District. The letter outlined the sentences given to nine other defendants, attaching copies of the Judgment and Sentence entered in eight of those cases. In addition to deferred or suspended sentences in all cases, one was ordered to pay $240 in probation costs if supervised in New Mexico; one was fined $2,000; one was directed to pay $500 to Crimestoppers; one was to pay probation costs as determined by the probation office; and another was assessed $2,500 for costs of prosecution. At the sentencing hearing, the following colloquy occurred:

[Judge Cole]: Are you satisfied that in lieu of a fine, in order to effectuate a deferred sentence, I would impose a substancial [sic] assessment of cost[s]?

[Mr. Farrah]: Yes, sir. I am. On top of that who is going to challenge it? We are not certainly.

In *State v. Ayala*, 95 N.M. 464, 623 P.2d 584 (Ct.App.1981), and *State v. Valley Villa Nursing Center*, 97 N.M. 161, 637 P.2d 843 (Ct.App.1981), this court held that costs for the grand jury, the trial jury, the bailiff, court reporters, mileage and per diem for jurors, and copies of documents presented to the grand jury, were not assessable against the defendant in a criminal conviction absent specific statutory authorization, because those costs are "part of the general expense of maintaining a system of courts and the administration of justice." (95 N.M. at 466, 623 P.2d at 586; 97 N.M. at 162, 637 P.2d at 844.) Likewise, the State's costs in investigation and preparation of criminal charges would fall into the same category of general expense.

■ The instant case, however, is unlike either *Valley Villa, supra,* or *Ayala, supra.* The trial court here was invited to justify a deferred sentence by imposition of a "sub-

**354**

stantial" fine or cost assessment; defendant's counsel acquiesced in so resolving the matter and, on the record, waived any right to contest the amount assessed or the manner in which payment would be made. When an attorney agrees in open court that the court may proceed, in a fashion suggested by counsel and in harmony with the apparently mutual intention of the court, client and counsel, without regard to technicalities, that agreement is binding on the client. *Cf., Snyders v. Hale*, 89 N.M. 734, 557 P.2d 583 (Ct.App.1976).

 Having requested the court's exercise of discretion, and having waived all objections to the assessment of costs in lieu of a fine, defendant may not now challenge either the amount or method of payment ordered. *State v. Parrillo*, 94 N.M. 98, 607 P.2d 636 (Ct.App.1979). The alternatives of accepting that portion of the sentence as rendered, or not at all, are discussed in *State v. Gibson*, 96 N.M. 742, 634 P.2d 1294 (Ct.App.1981).

The judgment and sentence is affirmed in all respects other than the length of the probation period and the time during which community service is to be performed. This matter is remanded to the trial court for correction of those two items in accordance with the views expressed herein.

IT IS SO ORDERED.

HENDLEY and LOPEZ, JJ., concur.