664 P.2d 360

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Juan BACA, Defendant-Appellant.**

**No. 14596.**

Supreme Court of New Mexico.

June 3, 1983.

Michael Dickman, Appellate Defender, Santa Fe, for defendant-appellant.

Alonzo J. Padilla, Albuquerque, Trial Counsel.

Paul G. Bardacke, Atty. Gen., Elizabeth Major, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

FEDERICI, Justice.

This case is a direct appeal from the defendant-appellant's (defendant) Juan L. Baca's conviction of first degree murder. On April 26, 1979, the defendant was indicted for the shooting death of Toby Baca. Joe "Shuske" Baca, not a party to this appeal, was indicted for aiding and harboring the defendant. The defendant was convicted of the first degree murder of Toby Baca. That conviction was appealed and this Court reversed the trial court and remanded the case for a new trial. *State v. Baca*, 97 N.M. 379, 640 P.2d 485 (1982). In September, 1982, defendant was retried. He was again found guilty of first degree murder and was sentenced to life imprison-

ment. From this later conviction, defendant appeals. We affirm.

On appeal, defendant asserts that the trial court erred in not granting his motion for a new trial based on three grounds:

1. Whether the trial court erred in denying defendant's motion for a new trial based upon a juror's failure to disclose certain information.

2. Whether the prosecutor's questions about Nuestra Familia constituted misconduct which denied the defendant a fair trial.

3. Whether the photographic identification of the defendant by the victim's widow should have been suppressed.

## 1. *Juror's Failure to Disclose Information.*

■ J. Manuel Beserra, prospective juror number 20, was the sixth venireman qualified to sit on defendant's jury. He subsequently became the jury foreman. The defendant contends that this juror should not sit on the jury panel because he may be prejudiced against the defendant; therefore, the integrity of the jury was compromised by the juror, denying to the defendant a fair and impartial trial. We disagree.

The record reveals that Mr. Beserra had, as a prospective juror, filled out a juror questionnaire which specifically inquired whether any member of the prospective juror's family was, or had been, a member of "any law enforcement agency." To this question, Mr. Beserra answered in the negative. In fact, Mr. Beserra's brother was a retired, longtime Albuquerque police officer. Mr. Beserra also answered the questionnaire that he had previously served on a criminal jury. Mr. Beserra had not served on a criminal jury. Finally, on voir dire, the juror was directly questioned by the defense counsel whether he had a "relative" or "close friend" who was a member of the Albuquerque Police Department. The juror did not inform the court that his brother was a retired policeman, albeit no longer an active member of the Albuquerque Police Department.

Defendant primarily relies upon *Mares v. State,* 83 N.M. 225, 490 P.2d 667 (1971), for

the rule that where a juror has not fully and truthfully answered any inquiries that may tend to compromise the integrity of the jury, then the defendant's right to a fair and impartial trial has been denied. U.S. Const. amend. VI; N.M. Const. art. II, sec. 14. See also *State v. Rodriguez,* 94 N.M. 801, 617 P.2d 1316 (1980); *State v. McFall,* 67 N.M. 260, 354 P.2d 547 (1960). We do not share the defendant's analysis of *Mares.* In *Mares,* the standard this Court established, and has continued to follow, is:

We think that the rule to govern such situations may be summarized as follows: Full knowledge of all relevant and material matters that might bear on possible disqualification of a juror is essential to a fair and intelligent exercise of the right of counsel to challenge either for cause or peremptorily. It is the duty of a juror to make full and truthful answers to such questions as are asked, neither falsely stating any fact nor concealing any material matter. If a juror falsely represents his interest or situation or conceals a material fact relevant to the controversy and such matters, if truthfully answered, might establish prejudice or work a disqualification of the juror, the party misled or deceived thereby, upon discovering the fact of the juror's incompetency or disqualification after trial, may assert that fact as ground for and obtain a new trial, upon a proper showing of such facts, even though the bias or prejudice is not shown to have caused an unjust verdict, it being sufficient that a party, through no fault of his own, has been deprived of his constitutional guarantee of a trial of his case before a fair and impartial jury.

*Id.* 83 N.M. at 227, 490 P.2d 669.

In *Mares,* the defendant was convicted of an unauthorized entry into a dwelling with intent to commit a felony while armed with a deadly weapon. This Court reversed the conviction because a juror in that case who, while he disclosed on voir dire that he had been a good friend of a robbery victim, should have further disclosed that he had been present in the victim's house following

commission of the crime when police officer's were seeking fingerprints. Because the defendant had been convicted based upon fingerprint evidence, and the juror had been present while police officers were searching for fingerprints, the defendant had been denied a jury free from the taint of partiality. This Court was concerned in that case, as here, about relevant and material factual situations wherein a juror should not serve because his judgment regarding a defendant might be so colored that his impartiality would be destroyed and he could no longer render a fair consideration in the trial. *State v. Rodriguez, supra; State v. Sims,* 51 N.M. 467, 188 P.2d 177 (1947); *State v. Perea,* 95 N.M. 777, 626 P.2d 851 (App.), *cert. denied,* 96 N.M. 17, 627 P.2d 412 (1981).

In this case, the defendant made a motion for a new trial based upon previously undisclosed information about Mr. Beserra's answers to the jury questionnaire and the query on voir dire. At the hearing, Mr. Beserra testified that his brother had unofficially retired from the police force in June of 1981; that his brother did not discuss his work with Mr. Beserra; that his brother had never discussed the Juan Baca case with Mr. Beserra; that Mr. Beserra did not know whether his brother had any connection with the Juan Baca case; that his failure to disclose that his brother had been a police officer was an inadvertent statement that he couldn't explain that Mr. Beserra would not give greater weight to the testimony of a police officer; and that, in any event, Mr. Beserra recalled being asked whether he could try the case according to his juror's oath and that he was instructed to base his decision on the law and the evidence presented. The trial court, in denying the defendant's motion for a new trial, found that the fact Mr. Beserra's brother was a retired Albuquerque police officer was not, in and of itself, germane to Mr. Beserra's ability to faithfully and fully discharge his juror's duties. Therefore, there was not a close relationship between the juror and the defendant, or such relevant and material facts present in the case that might bear on possible disqualification of the juror, so that it could be asserted that the defendant's trial was conducted in an atmosphere of bias or partiality.

Accordingly, Mr. Beserra's presence and participation on the jury was not axiomatically a demonstration of bias or partiality. *State v. Rodriguez, supra; State v. Chavez,* 78 N.M. 446, 432 P.2d 411 (1967); *State v. Ortega,* 77 N.M. 312, 422 P.2d 353 (1966). The relationship between Mr. Beserra and his brother as a retired police officer, or a misapprehension of misstatement made on a juror questionnaire or at voir dire by Mr. Beserra, does not constitute sufficient bias or partiality resulting in prejudice to defendant's case. *State v. McFall, supra.*

The trial court was called upon to exercise its discretion to see that the defendant had the benefit of a fair and impartial jury. After considering the defendant's motion for a new trial, based upon an allegation of bias or partiality, the trial court concluded that Mr. Beserra, although answering questions regarding the status of his brother, or other questions put to him, in a manner that could be characterized as less than candid, he nonetheless had not been unfair or partial in his role as a juror or as a jury foreman. Where there is nothing to indicate either manifest error or abuse of discretion by the trial court, in permitting Mr. Beserra to serve as a juror, then the trial court's decision will not be disturbed on appeal. *City of Clovis v. Ware,* 96 N.M. 479, 632 P.2d 356 (1981); *State v. Ford,* 81 N.M. 556, 469 P.2d 535 (App.1970); *State v. Maes,* 81 N.M. 550, 469 P.2d 529 (App.1970). The burden of establishing partiality is upon the party making such a claim. *Irvin v. Dowd,* 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). The defendant did not sustain his burden of demonstrating such partiality. *State v. Chavez, supra.*

### 2. Nuestra Familia.

■ The defendant maintains that he should have been granted a new trial because of the prosecutor's questions, during cross-examination of the defendant, about a New Mexico State Penitentiary prison gang

known as Nuestra Familia. Nuestra Familia is translated to mean, "Our Family". The defendant's claim is that the prosecutor's questions about Nuestra Familia created, directly or inferentially, an atmosphere of prejudice against the defendant so that he could not receive a fair trial. We disagree.

During cross-examination, the following colloquy occurred between the prosecutor and the defendant:

Prosecutor: You indicated to us that you'd been in the Penitentiary, isn't that right?

Defendant: In 1972 I was convicted, that's right.

Prosecutor: Did you ever hear of the name Nuestra Familia?

(an inaudible bench conference occurred)

Prosecutor: Are you a member of that group?

Defendant: Member of what group?

Prosecutor: Nuestra Familia?

Defendant: No, I'm not a member of anything.

The defendant asserts that the questions about Nuestra Familia are similar to those improper and prejudicial questions concerning organized crime that occurred in *United States v. Love,* 534 F.2d 87 (6th Cir.1976). In *Love,* the court held that the United States Attorney was guilty of misconduct, requiring reversal of the defendant's conviction, because of the prosecutor's intentional injection into the defendant's trial a direct reference to organized crime and a specific reference to the Mafia. The law is particularly protective of one accused of murder and of underworld connections where such similar suggestive references have been made. *United States v. Nace,* 561 F.2d 763 (9th Cir.1977).

The question, however, in this case is whether the reference to Nuestra Familia is reversible error because of prosecutorial misconduct of intentionally injecting into the trial a recognized spectre of organized crime, where it serves no meaningful, proper purpose and is without foundation in the evidence. *United States v. Marques,* 600 F.2d 742 (9th Cir.1979); *United States v.*

*Love, supra.* We do not agree that the prosecutor's reference, here, to Nuestra Familia either raised the implied existence of an organized criminal entity, or that the direct reference to Nuestra Familia so fatally infected the trial proceedings that it required a new trial. *United States v. Muscarella,* 585 F.2d 242 (7th Cir.1978); *Cf. State v. Ford, supra.*

The trial court permitted the prosecutor to continue his line of questioning about Nuestra Familia after an extended bench conference with the attorneys involved. The trial court was satisfied that the prosecutor had a reason that was permissable for inquiring about Nuestra Familia. After the quoted exchange by the prosecutor and the defendant about Nuestra Familia, no further questions arose about Nuestra Familia, nor were any references made about the prison gang during the balance of the trial. If there was any error by the prosecutor's remarks or reference to Nuestra Familia, we deem such error to be, in the context of these circumstances, harmless error.

### 3. *Photographic Identification.*

The defendant made a pre-trial motion to suppress JoAnn Baca's photographic identification of the defendant made on, April 11, 1979, April 13, 1979, and June 6, 1979, and any in-court identification made by JoAnn Baca of the defendant. JoAnn Baca is the widow of the victim. After a hearing, the motion was denied. The defendant contends that the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. We disagree.

JoAnn Baca was home in Albuquerque on the day her husband was shot to death. JoAnn Baca was in the kitchen of the house, looking out of a window, when two men, one of whom she may have known, but not the gunman, got out of a blue Chevrolet Impala and approached her husband. An argument ensued between the two men and the victim, apparently regard-

ing a narcotics transaction. Shortly, thereafter, four shots were fired, fatally wounding Toby Baca, in front of the family residence.

The defendant's contention is that because of JoAnn Baca's distraught state of mind, both during the course of events surrounding the shooting, and the period of time immediately subsequent to the shooting, she was not able to make a positive identification of the alleged gunman, on either April 11, 1979, April 13, 1979 or on June 5, 1979. In viewing the totality of the circumstances, we hold that identification of the defendant was reliable and therefore the trial court properly refused to suppress the identification.

■ New Mexico has established a two-part test to decide whether photographic identification is admissable. Initially, the trial court must determine whether the "photographic identification procedure was so impermissably suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *State v. Baldonado,* 82 N.M. 581, 582, 484 P.2d 1291, 1292 (App. 1971) (quoting *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968)). *See also Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). However, even given the suggestiveness of an identification procedure, the linchpin in determining the admissability of identification testimony is whether the testimony is reliable. *State v. Nolan,* 93 N.M. 472, 601 P.2d 442 (App.1979). Factors to be considered in assessing whether identification testimony is reliable include:

> [T]he opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.

93 N.M. at 477, 601 P.2d at 447, (quoting *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977)). *See also Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

■ Taking these various factors into account, the record supports the conclusion that JoAnn Baca's photographic identification was reliable. At the first photographic array on April 11, 1979, the investigating police officer showed JoAnn Baca several photographs which did not include a photograph of the defendant. She did not positively identify anyone, although she did select one photograph with the inscription "Juan L. Baca" written on the back. At the second photographis array on April 13, 1979, JoAnn Baca selected the defendant's picture from a series of black and white photographs. Her brother-in-law, Americo Baca, was present during the viewing of the photographs but there is no indication in the record that he influenced JoAnn Baca's selection of the defendant's photograph. While upset, JoAnn Baca did make a positive identification of the defendant. At the third photographic array, on June 5, 1979, an investigator for the district attorney's office showed JoAnn Baca a series of four color photographs and one black and white photograph. The defendant was pictured in one of the four color photographs wearing a leather jacket. JoAnn Baca selected the defendant from these photographs as the gunman. JoAnn Baca recalled that the gunman was wearing a leather jacket when he fatally shot her husband. But, JoAnn Baca testified that the reason she picked the defendant's photograph was because of his face, not just because of this wearing apparel. There is some conflict between the witness' statement as to why she selected the defendant's photograph and that of another who accompanied JoAnn Baca to the third photographic array. The record supports the conclusion that JoAnn Baca's photographic identifications are sufficiently reliable to be considered as evidence. Applying the two-part test we have adopted in New Mexico, we do not find that, under the totality of the circumstances, JoAnn Baca's identification of the defendant was so impermissibly suggestive as to create a substantial likelihood of misidentification.

*State v. Padilla,* 98 N.M. 349, 648 P.2d 807 (App.) *cert. denied,* 98 N.M. 336, 648 P.2d 794 (1982); *State v. Wheeler,* 95 N.M. 378, 622 P.2d 283 (App.1980), *cert. denied,* 95 N.M. 593, 624 P.2d ·535 (1981); *State v. Nolan, supra.*

The judgment of the trial court is affirmed in all respects.

IT IS SO ORDERED.

SOSA, Senior Justice and RIORDAN, J., concur.