643 P.2d 246

**STATE of New Mexico,
Plaintiff-Appellant,**

v.

**Ronald BEACHUM, Defendant-Appellee.**

No. 5130.

Court of Appeals of New Mexico.

Nov. 19, 1981.

Rehearing Denied Dec. 2, 1981.

Writ of Certiorari Quashed
March 26, 1982.

Jeff Bingaman, Atty. Gen., Marcia E. White, Asst. Atty. Gen., Santa Fe, for plaintiff-appellant.

John B. Bigelow, Chief Public Defender, Martha A. Daly, Asst. Appellate Defender, Santa Fe, Michael L. Stout, Dist. Public Defender, Roswell, for defendant-appellee.

## OPINION

DONNELLY, Judge.

This interlocutory appeal stems from an order of the trial court granting a motion to suppress certain testimony of a complaining witness in a criminal proceeding. Defendant, Ronald Beachum, was charged with two counts of criminal sexual penetration in the first degree and one count each of aggravated burglary and armed robbery.

The prosecutrix was awakened during the early morning hours of July 8, 1980 by a male intruder in her bedroom. She was forced to engage in sexual intercourse and robbed at knife point. The defendant was arrested several days later and charged with an unrelated offense of criminal sexual contact with another woman. While defendant was being held in Chaves County Jail pending trial for the other offense, he voluntarily agreed to appear in a line-up with two other men. At the line-up, the prosecutrix herein was able to identify the voice of the defendant as that of her assailant, but was unable to make a positive visual identification.

Approximately seven weeks later, the prosecutor in charge of the case suggested that she undergo hypnosis to improve her recall and her ability to identify more positively the assailant. On August 28, 1980, the prosecutrix was hypnotized by Chief Wisniewski of the Roswell Police Department. The session was held at the police station and was also attended by the prosecuting attorney, Sergeant Pacheco of the City Police Department, and three other individuals. The proceeding was electronically tape-recorded and preserved. During the hypnosis session, prosecutrix was shown a photographic array of several individuals, including the defendant. Both during hypnosis and immediately thereafter, the prosecutrix identified the defendant as her assailant from these photographs.

Thereafter, defendant was charged by criminal information with four felony charges for crimes against prosecutrix. He was bound over for trial in the district court on each of the charges after a preliminary hearing in magistrate court.

Upon learning prior to trial that the prosecutrix had been hypnotized, defendant moved to suppress her testimony in its entirety, together with the testimony of Chief Wisniewski and of each of the witnesses present during her hypnosis, and all other evidence relating to statements made by her both during and after hypnosis. Defendant's motion to suppress was predicated upon several grounds. These included assertions that the scientific technique of hypnosis is not reliable for enhancing memory of eyewitnesses, that correct scientific procedures were not utilized in this hypnotic session, and that the hypnotist conducting it was not adequately qualified as an expert. Additional grounds advanced by defendant in support of his motion were that: the use of hypnosis denied defendant the right to confront the witness against him and to adequately cross-examine her; defendant was denied due process of law because the hypnosis session was impermissibly suggestive to the witness; the defendant was denied effective assistance of counsel because he was not represented by counsel or present at the time of performing such hypnosis; and by hypnotizing the complaining witness, the State had in effect destroyed material evidence in the case, namely the prosecutrix' independent recollection of the events in question.

The trial court held an evidentiary hearing on defendant's motion to suppress, at which expert witnesses familiar with hypnosis testified. The defense called, among other witnesses, Chief Wisniewski, who had conducted the hypnosis session.

Chief Wisniewski testified that he had attended a four-day training seminar on hypnosis, that he was a member of two professional organizations related to hypnosis, and that he had hypnotized approximately twelve crime victims in prior cases under investigation. He detailed the procedures used in the instant case to hypnotize the prosecutrix and described the results. In addition, the tapes of the proceeding were presented into evidence.

Dr. Bernard L. Diamond, a law professor from the University of California, also testi-

fied for the defense. He had extensive training in both the theory and technique of hypnosis and is a licensed physician specializing in psychiatry. In addition to his medical training in hypnosis, he had extensively researched the phenomena and had written on the subject. In his opinion, hypnosis is not a reliable scientific method for enhancing the memory of witnesses and hypnotically induced recollections are less reliable than normal recollections. He further testified that the hypnosis session with the prosecutrix was unduly suggestive. Because of the unreliability of hypnotically induced testimony generally and the improper procedures followed in this case, Dr. Diamond concluded that the prosecutrix was no longer a competent witness since her prior knowledge had been in effect destroyed.

In opposition to the testimony of Dr. Diamond, the State presented the testimony of Dr. Martin Reiser, Director of Behavioral Sciences at the Los Angeles Police Department and Director of the Law Enforcement Hypnosis Institute. A former psychology professor, he held a Ph.D. in education and clinical psychology. In his opinion, hypnosis is a valuable and reputable scientific technique of proven value in both psychological treatment of individuals and in criminal investigation. Dr. Reiser further testified that, in his opinion, the use of hypnosis to facilitate witness recall does not result in undue suggestibility of such individuals if properly conducted.

After hearing these experts and other witnesses, the trial court adopted specific findings of fact based upon the evidence presented. The court did not suppress all of the prosecutrix' testimony, but ordered that (1) she would not be allowed to make in-court identification of the defendant; (2) the witness would not be permitted to testify to any evidence developed from the hypnotic session; and (3) the witness would be permitted to testify to the events occurring on July 8, 1980, and her voice identification of defendant, but would not be permitted to testify to her identification of defendant at any subsequent time, nor to testify to her identification of defendant based on any subsequent events.

Pursuant to § 39–3–3A(3), N.M.S.A.1978, the State perfected this interlocutory appeal from such ruling, raising two issues, contending that the trial court abused its discretion: (1) in its determination that hypnosis was so unreliable a method of enhancing the memory of witnesses and was so impermissibly suggestive that testimony following hypnosis was inadmissible; (2) in its ruling that the identification procedures employed in this case were so suggestive that they were likely to lead to misidentification.

The legal issues presented in this appeal involving the use of hypnosis are previously undecided in this state.

## I. *Admissibility of hypnotically induced testimony*:

The trial court's order in effect permits the prosecutrix to testify to recollections and identification of the defendant that came before her hypnosis, but bars testimony as to evidence or recollections induced by the hypnosis. The State asserts as error the findings that hypnosis is unreliable and suggestive and the ruling that hypnotically induced recollections are inadmissible evidence. Defendant argues that hypnosis is so suggestive that it renders a witness totally incompetent to testify and that the trial court should have barred the prosecutrix' testimony to both pre-hypnotic and post-hypnotic recollection. The State responds that defendant is precluded from raising the admissibility of the pre-hypnotic testimony of the prosecutrix, as he is requesting relief from an order to which he did not object and from which he did not appeal, citing N.M.Crim.App.P. Rule 308, N.M.S.A.1978; *State v. Jacobs*, 91 N.M. 445, 575 P.2d 954 (Ct.App.), *cert. denied*, 91 N.M. 491, 576 P.2d 297 (1978). Nevertheless, we must reach defendant's argument to determine the issue raised by the State: the question of whether hypnosis taints a witness' recollection. Resolution of this issue is integral to and determinative of the admissibility of the witness' testimony to either pre-hypnotic or post-hypnotic memories.

The determination of this issue necessitates an analysis of the nature of hypnosis as well as legal decisions on the subject.

In McLaughlin, Hypnosis—Its Role and Current Admissibility in the Criminal Law, 17 Willamette L.Rev. 665 (1981), the hypnotic state is explained. It is defined broadly as a state of heightened suggestibility induced in an individual by another. Such state is normally achieved through bodily relaxation and the subject's concentration upon certain stimuli. The state is multileveled, with each level deeper than the preceding level and each marked by characteristic motor responses and mental functions. See also Thigpen, Safeguards Against Suggestiveness: A Means for Admissibility of Hypno induced Testimony, 38 Wash. & Lee L.Rev. 197 (1981).

The value of hypnosis as a tool in medical treatment and therapy has been recognized by the American Medical Association, the British Medical Association, and the American Psychological Association. Orne, The Use and Misuse of Hypnosis in Court, 27 Int'l J. Clinical & Experimental Hypnosis 311 (1979); Diamond, Inherent Problems in the Use of Pretrial Hypnosis on a Prospective Witness, 68 Calif.L.Rev. 313 (1980).

The admissibility of a witness' in-court testimony to hypnotically induced recollection was considered in *People v. Smrekar*, 68 Ill.App.3d 379, 24 Ill.Dec. 707, 385 N.E.2d 848 (1979). There the court noted:

Medical authorities indicate that hypnosis has become established as a valuable tool in the hands of the skilled practitioner and can be used to restore the memory of experiences that have been repressed due to their unpleasant or painful nature. Noyes & Klob, Modern Clinical Psychiatry 603 (1973); American Handbook of Psychiatry, Ch. 12 'Hypnotherapy' by Lewis R. Walberg (Artieti ed. 1974); * * * Comprehensive Textbook of Psychiatry, § 34.34 'Hypnosis: An Adjunct to Psychotherapy' by Herbert Spiegel (Freedman & Caplan eds. 1967).

In *People v. Smrekar*, the issue was not whether the statement elicited from the witness *during* hypnosis were admissible,

but whether hypnosis so tainted the witness' subsequent identification of defendant that her hypnotically adduced recollections were inadmissible. The court held her testimony admissible, relying upon prior similar decisions in other jurisdictions.

Opinion is diverse as to the admissibility of hypnotic evidence. Annot., Admissibility of Hypnotic Evidence, 92 A.L.R.3d 442 (1979).

As pointed out by the State, the weight of authority holds that hypnotically refreshed testimony or identifications are not inadmissible as a matter of law.[1]

Hypnosis has successfully been utilized to refresh the recollection of eye witnesses or assist in the recall of important evidence.

In *People v. Hughes*, 99 Misc.2d 863, 417 N.Y.S.2d 643 (Onon.Cty.Ct.1979), the court noted:

Hypnosis is now receiving widespread use as a tool in criminal investigations, primarily to aid witnesses in recalling events or details which have apparently been forgotten or unconsciously absorbed. It has enjoyed spectacular successes. For example, in July of 1975, Franklin Edward Ray, a bus driver who, along with the twenty-six (26) children in his bus, vanished outside of Chowchilla, California, was hypnotized and, during the trance, was able to recall five of the six digits on the license plate of the kidnappers' van. This information proved to be a breakthrough in the investigation.

Defendant, urging a flat prohibition of the use of hypnotically induced testimony, cites as precedent *People v. Tait*, 99 Mich. App. 19, 297 N.W.2d 853 (1980); *State v. Mack*, 292 N.W.2d 764 (Minn.1980), where

such testimony was excluded as a matter of law. Defendant further urges us to adopt the broader rule of *State v. Mena*, 128 Ariz. 226, 624 P.2d 1274 (1981), where the court held that a witness may not testify to even pre-hypnotic recollections of events that were the subject of pre-trial hypnosis.

Although a number of states have allowed witnesses to testify to refreshed recollections and to identify assailants in court after pretrial hypnosis, most jurisdictions do not allow testimony repeating the matters elicited during hypnosis of a witness when offered to prove truth of the matters stated. *Jones v. State*, 542 P.2d 1316 (Okl.Crim. App.1975); *State v. Pierce*, 263 S.C. 23, 207 S.E.2d 414 (1974); see generally *State v. McQueen*, 295 N.C. 96, 244 S.E.2d 414 (1978). As noted by Dr. Diamond in his law review article, supra, the use of hypnosis as a technique to refresh the memory of a witness must be distinguished from the use of hypnosis as a means of attempting to determine truth or falsity of the witness' statements. Diamond observes that hypnosis for the purpose of memory enhancement "must be distinguished from those where a party seeks to introduce statements made during the hypnotic trance for the purpose of establishing the truth or falseness of the alleged facts. Such statements are consistently excluded. Moreover, no trial court, * * * has endorsed hypnosis of a witness before the trier of fact." See also, *Greenfield v. Commonwealth*, 214 Va. 710, 204 S.E.2d 414, 92 A.L.R.2d 432 (1974).

Undeniably, the use of hypnotically revived recollection by witnesses in trials is not without potential for abuse. As pointed out in *State v. Mena, supra*, individuals

---

1. See, e.g., *United States v. Awkard*, 597 F.2d 667 (9th Cir. 1979) *cert. denied*, 444 U.S. 885, 100 S.Ct. 179, 62 L.Ed.2d 116 (1979); *United States v. Adams*, 581 F.2d 193 (9th Cir. 1978), *cert. denied*, 439 U.S. 1006, 99 S.Ct. 621, 58 L.Ed.2d 683 (1978); *United States v. Narcisco*, 446 F.Supp. 252 (E.D.Mich.1977); *Clark v. State*, 379 So.2d 372 (Fla.Dist.Ct.App.1979); *People v. Smrekar*, 68 Ill.App.3d 379, 24 Ill.Dec. 707, 385 N.E.2d 848 (1979); *Harding v. State*, 5 Md.App. 230, 246 A.2d 302 (1968), modified in *Polk v. State*, 48 Md.App. 382, 427 A.2d 1041 (1981); *State v. Greer*, 609 S.W.2d 423 (Mo.

App.1980); vacated on other grounds 450 U.S. 1027, 101 S.Ct. 1735, 68 L.Ed.2d 222 (1981); *State v. Hurd*, 86 N.J. 525, 432 A.2d 86 (1981); *People v. Hughes*, 99 Misc.2d 863, 417 N.Y.S.2d 643 (Onon.Cty.Ct.1979; *People v. Lucas*, 107 Misc.2d 231, 435 N.Y.S.2d 461 (Sup.Ct.1980); *State v. McQueen*, 295 N.C. 96, 244 S.E.2d 414 (1978); *State v. Jorgenson*, 8 Or.App. 1, 492 P.2d 312 (1971); see also civil cases, *Wyller v. Fairchild Hiller Corp.*, 503 F.2d 506 (9th Cir. 1974); *Connolly v. Farmer*, 484 F.2d 456 (5th Cir.)

undergoing hypnosis may be susceptible to heightened suggestibility by the procedures of the hypnotist, may experience distortions of reality, false memories, fantasies, or may be prone to confabulation (the filling in of memory gaps with false memories or inaccurate bits of information). Where the hypnotic process is not carefully administered, witnesses may later be convinced that distortions, suggestions and confabulations developed under hypnosis are in fact derived from their own memories.

Problems inherent in the use of hypnosis were also recognized in *State v. Hurd*, 86 N.J. 525, 432 A.2d 86 (1981), which nevertheless held hypnotically revived recollections admissible under certain safeguards. The court enumerated the problems:

First, a person undergoing hypnosis is extremely vulnerable to suggestions. * *

A second aspect of hypnosis that contributes to its unreliability is the loss of critical judgment. A person under hypnosis is more willing to speculate and will respond to questions with the confidence he would not have as a waking person. * * * The third * * * phenomenon is the tendency to confound memories evoked under hypnosis with prior recall. [Citations omitted].

The heart of the issue is the reliability of such procedure to revive the witness' memory or to sharpen the witness' ability to perceive and recall, not whether hypnosis is an infallible method of determining the truth from a witness.

The use of hypnosis as a means of enhancing the recollection of a witness is distinguishable from the use of "truth serum" or the use of polygraph evidence. The results of "narco-synthesis" or "polygraphs" are generally offered to prove truth of statements that are the subject of the tests. Similarly in the case of hypnosis, statements elicited under hypnosis are almost universally excluded as proof of the truth of such statements. The distinction between hypnotically refreshed recollection, the polygraph and narco-analysis are discussed by McLaughlin, Hypnosis—Its Role and Current Admissibility in the Criminal Law, supra. Noting the general misconceptions and confusions on the subject, the article observes:

[H]ypnosis * * * is conceptually different from polygraph testing and narco-analysis. The last two procedures function as truth elicitors, and properly have nothing to do with memory retrieval. Conversely, • hypnosis is a means of a memory retrieval and cannot be classified as a truth elicitor. To classify hypnosis with polygraph testing with narco-analysis erroneously implies that hypnosis can produce truth. This gives rise to the danger that trial courts will label hypnosis as a scientific means of ensuring truth, thereby leading the jury to attribute "uncritical and absolute reliability" to hypnosis without evaluating its flaws. * * *

[H]ypnosis is a device that assists recall and is not a mechanism that guarantees the truth of a witness' statements. From this perspective hypnosis is merely another memory catalyst analogous to the traditional source of present recollections refreshed. * * *

\* \* \* \* \* \*

By noting the crucial distinction between hypnosis (a memory stimulus) and polygraph testing and narco-analysis (truth elicitors), the concerns over the scientific unreliability of hypnosis as a truth elicitor can be dispelled.

In *State v. Lindemuth*, 56 N.M. 257, 243 P.2d 325 (1952), testimony relating statements made by the defendant while under the influence of sodium pentathol was held inadmissible to prove the truth of his incourt statements. The court further held that: "Until the use of the drug as a means of procuring the truth from people under its influence is accorded general scientific recognition, we are unwilling to enlarge the already immense field where medical experts, apparently equally qualified, express such diametrically opposite views on the same facts and conditions * * *."

New Mexico courts admit polygraph evidence with certain safeguards. As set

forth in *State v. Dorsey*, 88 N.M. 184, 539 P.2d 204 (1975), as a prerequisite to the admission of such evidence, a foundation must first establish the expertise of the polygrapher, it must be shown that the procedure utilized is accepted as reliable in the expert's profession, and, the validity of the particular test made on the subject must be established.

*Lindemuth* and *Dorsey, supra,* apply the general rule governing the judicial admission of scientific evidence enunciated in *Frye v. United States,* 54 App.D.C. 46, 293 F. 1013, 34 A.L.R. 145 (D.C.Cir.1923) and relied on by the New Mexico Supreme Court in *State v. Trimble,* 68 N.M. 406, 362 P.2d 788 (1961).

*Frye* held that for expert testimony deduced from a scientific principle to be admissible, the technique from which the deduction is derived must be sufficiently established to have gained general acceptance in the particular field in which it belongs.

The crux of the issue is whether hypnosis is reasonably reliable, not in eliciting truth as with polygraph and narco-analysis, but rather in refreshing a witness' memory. As noted in *State v. Hurd,* supra:

> Hypnosis can be considered reasonably reliable if it is able to yield recollections as accurate as those of an ordinary witness, which likewise are often historically inaccurate * * *. If it is conducted properly and used only in appropriate cases, hypnosis is generally accepted as a reasonably reliable method of restoring a person's memory.

The testimony of a witness who has undergone pre-trial hypnosis is to revive the memory of such witness without the administration of any drugs is neither automatically inadmissible nor subject to a blanket proscription. As observed by Justice Oman in *State v. Dorsey,* supra, the rules of evidence must be interpreted to encourage the reception of evidence that will aid in the search for the truth. As stated in *Dorsey,* quoting N.M. Evidence Rule 102:

> These rules [of evidence] shall be construed to secure fairness in administration * * * and promotion of growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined.

Under N.M. Evidence Rule 601, "Every person is competent to be a witness except as otherwise provided in these rules." Counterbalanced is N.M. Evidence Rule 403, which provides, "although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice * * *."

The latter rule invests the trial court in exercise of its sound discretion with authority to refuse to receive testimony of a witness whose memory has been revived through the use of hypnosis. A rule of per se inadmissibility, we conclude, is unnecessarily broad and may result in the exclusion of evidence that may be valuable and accurate. The better rule is that testimony of pre-hypnotic recollections is admissible in the sound discretion of the trial court, but post-hypnotic recollections, revived by the hypnosis procedure, are only admissible in a trial where a proper foundation has also first established the expertise of the hypnotist and that the techniques employed were correctly performed, free from bias or improper suggestibility.

As stated in *United States v. Adams,* 581 F.2d 193 (9th Cir. 1978), *cert. denied,* 439 U.S. 1006, 99 S.Ct. 621, 58 L.Ed.2d 683 (1978):

> [T]he fact of hypnosis affects credibility but not admissibility.
>
> * * * * * *
>
> [H]ypnosis on persons who may later be called upon to testify in court carries dangerous potential for abuse. Great care must be exercised to insure that statements *after* hypnosis are the product of the subject's own recollections * * * [Citations omitted, emphasis supplied.]

To hold otherwise presents the State with the dilemma of choosing to use a particular witness at trial or to use hypnosis on the witness as an investigatory tool. See *State v. Mena,* supra. Since New Mexico permits the introduction of polygraph evidence with

certain safeguards, we believe this same rationale should apply in the case of hypnotically refreshed recollection of a witness.

The admissibility of a witness' testimony which has been hypnotically refreshed should be subject to the prerequisite showing that the individual who administered such hypnosis was qualified as an expert and properly performed such procedure. As noted by Justice Easley in *State v. Bell*, 90 N.M. 134, 560 P.2d 925 (1977), the party offering scientific evidence must establish the qualifications of the witness tendered as an expert. Similarly we conclude that in laying a foundation as to the qualifications of an expert hypnotist, it is incumbent on the party offering such testimony to establish (1) the expert's qualifications and (2) the reliability of the procedure utilized. Even if the testimony is admitted, the opponent may nevertheless challenge its credibility or reliability by questioning the procedures utilized in the individual case by skilful cross examination and introduction of opposing expert testimony.

 To avoid or minimize the possibility of the improper application of hypnosis, we adopt the six pronged test laid down by the New Jersey Supreme Court for admissibility of hypnotically induced testimony of a witness. In *State v. Hurd*, supra, the court held that the trial court should evaluate both the kind of memory loss that hypnosis was used to restore and the specific technique employed, based upon expert testimony presented by the parties. The first question the court must consider is the appropriateness of using hypnosis for the kind of memory loss encountered. Once it has determined that a case is a kind likely to yield normal recall if hypnosis is properly administered, then it is necessary to determine whether the procedures followed were reasonably reliable.

In *Hurd*, the court specified:

Before it may introduce hypnotically refreshed testimony, a party must demonstrate compliance with these requirements.

First, a psychiatrist or psychologist experienced in the use of hypnosis must conduct the session. This professional should also be able to qualify as an expert in order to aid the court in evaluating the procedures followed. Although we recognize that there are many other people trained to administer hypnosis and skilled in its use for investigative purposes, we believe that a professional must administer hypnosis if the testimony revealed is to be used in a criminal trial. In this way, the court will be able to obtain vital information concerning the pathological reason for the memory loss and the hypnotizability of the witness. Furthermore, the expert will be able to conduct the interrogation in a manner most likely to yield accurate recall.

Second, the professional conducting the hypnotic session should be independent of and not regularly employed by the prosecutor, investigator or defense. This condition will safeguard against any bias on the part of the hypnotist that might translate into leading questions, unintentional cues, or for suggestive conduct.

Third, any information given to the hypnotist by law enforcement personnel or the defense prior to the hypnotic session must be recorded, either in writing or another suitable form. This requirement will help the court determine the extent of information the hypnotist could have communicated to the witness either directly or through suggestion.

Fourth, *before* inducing hypnosis the hypnotist should obtain from the subject a detailed description of the facts as the subject remembers them. The hypnotist should carefully avoid influencing the description by asking structured questions or adding new details.

Fifth, all contacts between the hypnotist and the subject must be recorded. This will establish a record of the pre-induction interview, the hypnotic session, and the post-hypnotic period, enabling a court to determine what information or suggestions the witness may have received during the session and what recall was first elicited through hypnosis. The use of videotape, the only effective record

of visual cues, is strongly encouraged but not mandatory.

Sixth, only the hypnotist and the subject should be present during any phase of the hypnotic session, including the pre-hypnotic testing and the post-hypnotic interview. Although it may be easier for a person familiar with the investigation to conduct some of the questioning, the risk of undetectable, inadvertent suggestion is too great, as this case illustrates. Likewise, the mere presence of such a person may influence the response of the subject.

Once compliance with these safeguards is shown, the trial court can determine the reliability and therefore the admissibility of hypnotically refreshed testimony, according to the standard set forth above.

■ The New Jersey Supreme Court in *Hurd* also required as a further safeguard that the party seeking to introduce hypnotically refreshed testimony establish compliance with the requirements for admissibility by clear and convincing evidence. This standard we think is appropriate in criminal cases to obviate the potential for abuse of hypnosis, to ensure reliability, and to avoid injustice.

■ It is incumbent upon the prosecution or defense under N.M.Crim.P. Rules 27 and 28, N.M.S.A.1978, to disclose to opposing counsel that a witness called by a party has undergone hypnosis in order to facilitate memory recall.

■ In establishing a proper foundation for the use of hypnotically refreshed testimony, the hypnotist may testify to the reliability of the procedures utilized, but may not on direct examination offer tape recordings, video tapes, or transcripts of such hypnosis sessions as substantive evidence to prove truth of the matters therein stated. See *State v. Chase*, 206 Kan. 352, 480 P.2d 62 (1971); *People v. Myers*, 35 Ill.2d 311, 220 N.E.2d 297 (1966), *cert. denied*, 385 U.S. 1019, 87 S.Ct. 752, 17 L.Ed.2d 557 (1967); *State v. Harris*, 241 Or. 224, 405 P.2d 492 (1965).

■ For purposes of cross examination, pursuant to N.M. Evidence Rule 612, an adverse party is entitled to have the electronic tape or other proper record of the hypnosis session produced for inspection and copying in advance of trial, to cross-examine the witness thereon, and to introduce into evidence those portions which relate to the testimony of the witness. Searching and probative cross-examination is vital to elicit the nature and methods of the procedure used, the reliability of the techniques employed, and the credibility of the witnesses involved.

As noted in *People v. Smrekar*, supra, admissibility of hypnotically refreshed testimony is in line with the general rule that:

[W]hen a witness is capable of giving testimony having some probative value, the witness is permitted to testify with evidence of impairment of the ability of the witness to accurately recall evidence or that suggestive material has been used to refresh the witness' recollection going only to the weight to be given the testimony of the witness. (McCormick, Evidence §§ 9, 45, 63 at 17, 93, 141 (2d Ed. 1972). The notable exception to the foregoing is the requirement that testimony in a criminal case of the identification of the accused as the culprit must be excluded if that identification has been tainted by the prior unduly suggestive procedure and has no independent origin. See *Stovall v. Denno* (1967) 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199, and its progeny.

■ Subject to the exercise of the trial court's sound discretion and the guidelines set out above, the court may permit a witness whose testimony has been hypnotically refreshed to testify before the fact finder on matters that are relevant to the factual issues to be determined. Such procedure is consistent with the general rule governing refreshing a witness' memory. See *State v. Bazan*, 90 N.M. 209, 561 P.2d 482 (Ct.App.), *cert. denied*, 90 N.M. 254, 561 P.2d 1347 (1977).

■ At the conclusion of the hearing on defendant's motion to suppress in the instant case, the trial court determined upon

the evidence before it that the use of hypnosis to enhance the memory of the prosecutrix was unduly suggestible. The trial court did not preclude the complaining witness from testifying as to her voice identification of defendant or any of the events concerning the attack upon her on July 8, 1980. N.M. Evidence Rule 403 invests the court with discretion to exclude the admission of evidence where the danger of prejudice is deemed to outweigh any probative value. A review of the record indicates that under the facts before it the trial court's ruling was supported by substantial evidence and should not be disturbed on appeal.

II. *Suggestibility of line-up procedures*:

The State's second point raised on appeal asserts that the trial court abused its discretion by ruling the identification procedures employed by the State impermissibly suggestive.

Following the hearing on defendant's motion to suppress, the trial court concluded that, even without the use of hypnotic procedures on the prosecutrix, the photo identification techniques employed with prosecutrix were so suggestive as to raise "serious questions" about the reliability of an in-court identification by her of defendant. In its order of suppression, the trial court expressly excluded any in-court visual identification of defendant by the prosecutrix, and any testimony by such witness relating to visual identifications made subsequent to the July 8, 1980 line-up.

At the first identification procedure, the prosecutrix viewed defendant and two other males in a physical line-up several days after her assault, but could not visually identify defendant. At the subsequent hypnotic session, the witness also observed a photo array of eleven males, which included defendant but not any of the other two men who appeared in the first line-up. The witness identified two men from the photo line-up, only one of whom was the defendant. Following the hypnotic session, the prosecutrix was shown the same photo-array of eleven men, and she positively identified the defendant.

■ It is well settled that a witness' in-court or out-of-court identifications of a defendant will be suppressed when, under the totality of the circumstances, an out-of-court identification procedure was so unnecessarily suggestive as to give rise to a substantial likelihood of misidentification, which denies a defendant due process. *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1248 (1968); *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). See *State v. Nolan*, 93 N.M. 472, 601 P.2d 442 (Ct.App.), *cert. denied*, 93 N.M. 683, 604 P.2d 821 (1979); *State v. Vialpando*, 93 N.M. 289, 599 P.2d 1086 (Ct.App.), *cert. denied*, 93 N.M. 172, 598 P.2d 215 (1979).

■ The admission or exclusion of evidence is a decision within the sound discretion of the trial judge, whose judgment will be set aside only upon a showing of abuse of discretion. *State v. Bell*, 90 N.M. 134, 560 P.2d 925 (1977); *State v. Marquez*, 87 N.M. 57, 529 P.2d 283 (Ct.App.), *cert. denied*, 87 N.M. 47, 529 P.2d 273 (1974).

■ The trial court had first-hand the opportunity to view the witnesses at the suppression hearing. Examination of the record in this case reveals substantial evidence to support the trial court's finding that the identification procedures employed were impermissibly suggestive under the totality of the circumstances. Compare *State v. Wheeler*, 95 N.M. 378, 622 P.2d 283 (1980). Considered with the trial court's determination that under the facts of this case the hypnosis of the prosecuting witness was also unlawfully suggestive, the facts require deference on appeal to the trial court's ruling suppressing such evidence. Although we find that the use of hypnotic procedures to revive a witness' recollection is not as a matter of law improper, nor inherently impermissible when performed subject to appropriate safeguards, nevertheless under the facts contained in the

692

record herein, the trial court did not abuse its discretion in ordering the visual identification evidence suppressed. The order of the trial court is affirmed.

IT IS SO ORDERED.

WALTERS, C. J., and LOPEZ, J., concur.