**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2011-NMCA-107**

**Filing Date: August 16, 2011**

**Docket No. 30,044**

**STATE OF NEW MEXICO,**

   **Plaintiff-Appellee,**

**v.**

**ILA COMBS,**

   **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**John Dean, District Judge**

Gary K. King, Attorney General
Andrea Sassa, Assistant Attorney General
Santa Fe, NM

for Appellee

Jacqueline L. Cooper, Acting Chief Public Defender
B. Douglas Wood III, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**FRY, Judge.**

**{1}** Just before Deputy Dale Frazier entered a magistrate courtroom to testify at Defendant's preliminary hearing, he was shown a large mug shot of Defendant and told that she was the driver to whom he had issued a routine traffic citation two months previously. He was also told that Defendant had given Deputy Frazier another person's identifying information when the citation was issued, and that Defendant had been charged with forgery as a result. Deputy Frazier then entered the courtroom and identified Defendant as the driver who had received the citation two months before. We conclude that showing Deputy Frazier

1

the mug shot immediately prior to his in-court identification of Defendant was highly suggestive and that the identification lacked other indicia that it was reliable. We reverse Defendant's conviction on the ground that the district court improperly denied her motion to suppress the identification.

**BACKGROUND**

**{2}** On the night of January 9, 2009, Deputy Frazier stopped a vehicle that did not have its headlights on. He made contact with the female driver who stated that she did not have her license with her, identified herself as Natasha Torres, and gave Deputy Frazier her date of birth and social security number. Deputy Frazier issued the driver a citation for driving without headlights.

**{3}** About two months after the citation was issued, Deputy Tim Nyce told Deputy Frazier that the driver was not in fact Natasha Torres. It was alleged that the driver who identified herself as Torres was in fact Defendant Ila Combs, and the State had filed a criminal information charging Defendant with one count of forgery arising from the citation. Deputy Nyce asked Deputy Frazier to give testimony at Defendant's preliminary hearing. When Deputy Frazier arrived at the courthouse, he was given an evidence packet that contained the citation he had issued on January 9, 2009, and a single photograph of Defendant. At the preliminary hearing, Deputy Frazier identified Defendant as the driver he had cited, and he was certain that Defendant was the person driving the vehicle that night.

**{4}** Defendant filed a motion to suppress any future in-court identification of her by Deputy Frazier on the ground that the single photograph shown to Deputy Frazier was impermissibly suggestive such that any subsequent identification was tainted and violated Defendant's right to due process. At the suppression hearing, Deputy Frazier testified that the photograph of Defendant presented to him prior to the preliminary hearing refreshed his recollection of Defendant; it did not supply the memory. He did not particularly remember any other events of the evening that he stopped Defendant's vehicle. He said that he remembered the incident with Defendant because at first he thought he might be dealing with a DWI investigation. However, the incident was not remarkable, and Deputy Frazier did not recall how many incidents he dealt with before or after this one or what day of the week it was.

**{5}** The district court denied the suppression motion but made no findings of fact. The case proceeded to trial, and Deputy Frazier again identified Defendant as the person driving when he issued the citation on January 9, 2009. He also testified that he saw a mug shot of Defendant that was "about the size of a sheet of paper" before he was ever asked to identify her in court at the preliminary hearing. Other than the mug shot and his encounter with her when he issued the citation, Deputy Frazier had never had any interaction with Defendant. Nonetheless, he continued to maintain that he had an independent memory of the events that evening. Defendant was convicted, and this appeal followed.

**DISCUSSION**

{6}     Defendant makes several arguments on appeal that we need not address because we conclude that the issue involving Deputy Frazier's identification is dispositive. We have a fairly extensive body of case law regarding the admissibility of showup identifications. The circumstances in the present case are somewhat different from the circumstances in those cases. This case involves an *in-court* identification of an alleged perpetrator immediately following the witness's exposure to a single photo of the alleged perpetrator, while other cases addressing this issue involve a witness's *out-of-court* identification of the alleged perpetrator following a showup procedure. *See, e.g., Patterson v. LeMaster*, 2001-NMSC-013, 130 N.M. 179, 21 P.3d 1032 (involving a showup identification of the defendant immediately after an armed robbery by witnesses to the crime); *State v. Johnson*, 2004-NMCA-058, 135 N.M. 567, 92 P.3d 13 (involving a showup identification by witnesses ten days after the crime). In addition, the witness in the present case is a law enforcement officer. However, we do not believe that these differences impact the analysis we undertake. We fail to see any significance in the location where the post-showup identification occurs, and we know of no authority suggesting that law enforcement officers' identifications following a showup procedure are inherently more reliable than those of lay witnesses.

**Standard of Review**

{7}     In considering whether an identification violated a defendant's due process rights under these circumstances, we "defer to the trial court's purely factual assessment; however, we are not bound by the court's application of law to the facts." *Johnson*, 2004-NMCA-058, ¶ 12. "Because the trial court's ultimate conclusion drawn from the facts was a legal determination, that is, that the witnesses' testimony did not violate [the d]efendant's due process rights, we review it de novo." *Id.*

**Two-Prong Analysis**

{8}     It is well established that a court assessing the admissibility of an identification procedure must first consider "whether the procedure used was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Id.* ¶ 13. If it was, then the court's second task is to determine "whether the identification is nonetheless reliable under the totality of the circumstances." *Id.* In assessing reliability, "courts weigh the corrupting effect of the suggestive identification against the witness's opportunity to view the criminal at the time of the crime, the attention the witness paid, the accuracy of any pre-identification description, the witness's level of certainty at the identification, and the time between the crime and the identification." *Patterson*, 2001-NMSC-013, ¶ 20 (internal quotation marks omitted).

{9}     We begin our discussion with the established principle that "[s]howup identifications are inherently suggestive, and their use should be avoided." *Johnson*, 2004-NMCA-058, ¶ 14 (internal quotation marks omitted). The circumstances in the present case were highly

suggestive. Deputy Frazier issued a citation that he characterized as "routine" for a relatively insignificant traffic violation on a night when he dealt with several other traffic incidents of which he had "little memory." The citation was only one of nearly "[100] stops" he would typically make in a month. Two months later, he was told that the driver who had received the citation was not the person she claimed to be. Immediately before going into a courtroom to identify this driver, he was shown a letter-sized mug shot of the person he was supposed to identify. Given these circumstances, "[t]he indicia of reliability must be significant to outweigh the suggestiveness." *Id.* ¶ 16. We therefore turn to the factors used to assess reliability.

**Opportunity to View the Perpetrator at the Time of the Crime**

**{10}** Deputy Frazier certainly had the opportunity to view Defendant when he stopped the vehicle she was driving, asked for her documents, and issued her a citation. But we deem it significant that the stop was only one of many performed by Deputy Frazier that night and that there were virtually no other characteristics that might distinguish this stop from the many others he undertook in the two months between the citation and his first in-court identification of Defendant. These circumstances are quite different from those in other cases in which the witnesses had the opportunity for close observation of the perpetrators in inherently memorable contexts. *See State v. Flores*, 2010-NMSC-002, ¶ 59, 147 N.M. 542, 226 P.3d 641 (explaining that the witness had observed and spoken with the perpetrator several days before the crime occurred and had observed the perpetrator several times on the day of the crime, and that the witness described the perpetrator's features, clothing, and manner of speech); *State v. Jacobs*, 2000-NMSC-026, ¶¶ 28, 32, 129 N.M. 448, 10 P.3d 127 (stating that the witnesses spoke with the perpetrator and observed him during a fifteen-minute ride in his car and that they described him to a police artist well enough that a penitentiary employee was able to identify the perpetrator from the composite sketch); *State v. Stampley*, 1999-NMSC-027, ¶ 24, 127 N.M. 426, 982 P.2d 477 (stating that witnesses, who were in a car at which the perpetrator fired shots, had ample opportunity to observe the perpetrator); *State v. Cheadle*, 101 N.M. 282, 283-84, 681 P.2d 708, 709-10 (1983) (explaining that witness, who saw the perpetrator shoot the witness's companion twice and who the perpetrator attempted to rape, saw the perpetrator's face from within inches), *overruled on other grounds by State v. Belanger*, 2009-NMSC-025, 146 N.M. 357, 210 P.3d 783. Under these circumstances, we give this factor neutral weight.

**Witness's Degree of Attention**

**{11}** There is no dispute that Deputy Frazier was paying attention to Defendant during the citation process. When he issues a citation, he particularly watches what the vehicle's occupants are doing because that is a matter of safety. As a result, this factor tends to establish reliability.

**Accuracy of Witness's Pre-identification Description**

4

**{12}** There is nothing in the record suggesting that Deputy Frazier ever described the driver before he identified Defendant at the preliminary hearing. Therefore, this factor weighs against reliability.

**Witness's Certainty**

**{13}** Deputy Frazier expressed certainty that Defendant was the driver he cited on January 9, 2009. However, that certainty is tempered by the lack of evidence that he ever described Defendant before he saw her mug shot and was told that the person in the photograph was the driver. *See Johnson*, 2004-NMCA-058, ¶ 23 (stating that the witness's certainty was tempered by "the absence of evidence that [he] saw any of the perpetrator's distinctive physical characteristics"). As a result, we give this factor neutral weight.

**Time Elapsed Between the Crime and Identification**

**{14}** Two months elapsed between Deputy Frazier's issuance of the citation and his identification of Defendant at the preliminary hearing. This is a significant length of time in light of Deputy Frazier's testimony that he conducts close to 100 traffic stops each month. In the ordinary course of events, it seems remarkable that he could remember Defendant's face out of the approximately 200 faces he saw in the interim without having first seen Defendant's mug shot. This factor weighs against reliability.

**Weighing of Factors**

**{15}** Of the five factors considered, two are neutral, one weighs in favor of reliability, and two weigh against reliability. On balance, we conclude that the showup procedure employed by Deputy Nyce "lacked the indicia of reliability necessary to overcome the suggestiveness of the identification procedure." *Id.* ¶ 26. As a result, we further conclude that the showup tainted Deputy Frazier's subsequent in-court identifications of Defendant. *See id.* ¶ 27. The district court improperly denied Defendant's motion to suppress the in-court identifications, and we reverse Defendant's conviction.

**CONCLUSION**

**{16}** For the foregoing reasons, we reverse Defendant's conviction and remand for a new trial.

**{17}    IT IS SO ORDERED.**

 

 
                **CYNTHIA A. FRY, Judge**

**WE CONCUR:**

5

**JAMES J. WECHSLER, Judge**


**RODERICK T. KENNEDY, Judge**

**Topic Index for *State v. Combs*, No. 30,044**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-SR | Standard of Review |
| | |
| **CT** | **CONSTITUTIONAL LAW** |
| CT-DP | Due Process |
| CT-SU | Suppression of Evidence |
| | |
| **CL** | **CRIMINAL LAW** |
| CL-MH | Motor Vehicle Violations |
| | |
| **CA** | **CRIMINAL PROCEDURE** |
| CA-DU | Due Process |
| CA-ID | Identification of Defendant |
| CA-MR | Motion to Suppress |
| CA-PO | Peace Officer |
| CA-WT | Witnesses |
| | |
| **EV** | **EVIDENCE** |
| EV-PK | Personal Knowledge |
| EV-PG | Photographs |
| EV-RC | Relevancy, Materiality, and Competency |
| EV-SU | Suppression of Evidence |
| EV-WT | Witnesses |