This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-36552**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**RICHARD MARTINEZ,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF MCKINLEY COUNTY**
**Robert A. Aragon, District Judge**

Hector H. Balderas, Attorney General
Emily Tyson-Jorgenson, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

Law Offices of Adrianne R. Turner
Adrianne R. Turner
Albuquerque, NM

for Appellant

### MEMORANDUM OPINION

**VARGAS, Judge.**

**{1}** Defendant, Richard Martinez, appeals his conviction for burglary. Defendant argues that (1) the evidence was insufficient to support his conviction, (2) his in-court identification was tainted by suggestive pretrial circumstances and should have been

suppressed, (3) he received ineffective assistance of counsel, (4) the amended criminal information did not conform to the bind-over order, requiring that his conviction be vacated, and (5) the district court erred in failing to excuse a juror for cause. We perceive no merit to these issues, and we therefore affirm.

**{2}** Because this is a memorandum opinion and the parties are familiar with the factual background, we will reserve discussion of the pertinent facts for our analysis.

## DISCUSSION

### A. Sufficiency of the Evidence

**{3}** We begin by considering Defendant's challenge to the sufficiency of the evidence because, if this issue is resolved in Defendant's favor, it will dispense with the need to consider Defendant's other arguments on appeal. *See State v. Zamora*, 2005-NMCA-039, ¶ 22, 137 N.M. 301, 110 P.3d 517 (recognizing that a defendant is entitled to dismissal of the charges if the evidence at trial was insufficient to sustain the conviction). "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Duran*, 2006-NMSC-035, ¶ 5, 140 N.M. 94, 140 P.3d 515 (internal quotation marks and citation omitted). We view the evidence "in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. "We will not substitute our judgment for that of the factfinder, nor will we reweigh the evidence." *State v. Trujillo*, 2012-NMCA-092, ¶ 5, 287 P.3d 344.

**{4}** In order to convict Defendant of burglary, the State was required to prove beyond a reasonable doubt that, on or about November 11, 2015, (1) Defendant entered a dwelling without authorization, and (2) Defendant entered the dwelling with the intent to commit a theft when inside. *See State v. Smith*, 1986-NMCA-089, ¶ 7, 104 N.M. 729, 726 P.2d 883 ("Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured."); *see also* NMSA 1978, § 30-16-3 (1971) (defining burglary as the "unauthorized entry of any vehicle, watercraft, aircraft, dwelling or other structure . . . with the intent to commit any felony or theft therein"); *State v. Ramirez*, 2008-NMCA-165, ¶ 6, 145 N.M. 367, 198 P.3d 866 ("The crime of burglary is complete when there is an unauthorized entry with the necessary intent; the intent does not have to be carried out after entry." (internal quotation marks and citation omitted)).

**{5}** At trial, Angel Amesoli testified that she saw Defendant and another man outside her neighbors' home. The men knocked on the door for several minutes, then went to the side of the house where they spent several minutes attempting to remove a window screen. Ms. Amesoli then saw the men go to the back of the house where they picked at a lock and were able to open a door leading to the basement. Ms. Amesoli then saw the two men enter the basement, after which, one of the men exited soon after and stood outside, while Defendant remained in the basement for several minutes more. Ms.

Amesoli called police, and several officers were dispatched to the residence. Defendant was arrested nearby. Both the residents of the home also testified that Defendant did not have permission to be inside their residence.

**{6}** On appeal, Defendant only challenges the sufficiency of the evidence to prove that he had the requisite intent to commit a theft inside the dwelling. We first observe that "[i]ntent can rarely be proved directly and often is proved by circumstantial evidence." *State v. Durant*, 2000-NMCA-066, ¶ 15, 129 N.M. 345, 7 P.3d 495; *see also State v. Rudolfo*, 2008-NMSC-036, ¶ 31, 144 N.M. 305, 187 P.3d 170 (stating that intent can be inferred from an overt act or the conduct of the defendant). Here, there was evidence that Defendant took steps to ensure the residence was unoccupied, he attempted to gain entry through a window by removing screens, and then, when unsuccessful, Defendant entered the residence and remained inside while his associate stayed on watch outside. There was also testimony establishing that Defendant did not have permission to enter the residence. This evidence was sufficient to allow the jury to infer that Defendant had the requisite mens rea to commit a theft inside the dwelling. *See State v. Jennings*, 1984-NMCA-051, ¶ 14, 102 N.M. 89, 691 P.2d 882 (recognizing that "[a]n unauthorized presence in a structure is evidence from which a jury could reasonably infer the necessary intent to commit a felony or theft therein"); *State v. Wilkerson*, 1972-NMCA-067, ¶ 6, 83 N.M. 770, 497 P.2d 981 (holding that the jury could reasonably infer from the defendant's unauthorized presence in the vehicle that he had the necessary intent to commit a felony or theft therein).

**{7}** Defendant argues that the fact of breaking into a residence does not necessarily demonstrate an intent to commit a theft inside, but could instead indicate the existence of some other lawful or unlawful purpose, such as seeking shelter, searching for a place to take drugs, or some other criminal conduct. However, "[w]hen a defendant argues that the evidence and inferences present two equally reasonable hypotheses, one consistent with guilt and another consistent with innocence, our answer is that by its verdict, the jury has necessarily found the hypothesis of guilt more reasonable than the hypothesis of innocence." *State v. Montoya*, 2005-NMCA-078, ¶ 3, 137 N.M. 713, 114 P.3d 393; *see State v. Schaaf*, 2013-NMCA-082, ¶ 11, 308 P.3d 160 (stating that, in reviewing the sufficiency of the evidence on appeal, we do not consider whether the evidence would have supported a different result). As stated, the evidence of Defendant's multiple attempts to enter the home after ensuring that it was unoccupied and his unauthorized presence inside the home was sufficient to support an inference that Defendant entered with intent to commit a theft inside. *See Jennings*, 1984-NMCA-051, ¶ 14 ("If there are reasonable inferences and sufficient direct or circumstantial facts, then the issue of intent is determinable by the jury and will not be reweighed by the reviewing court."). We therefore reject Defendant's challenge to the sufficiency of the evidence and proceed to consider the merits of Defendant's remaining issues.

**B.      Motion to Suppress Identification**

**{8}** Defendant next argues that the district court erred in denying his motion to suppress Ms. Amesoli's in-court identification of him because it was tainted by the prior, impermissibly suggestive identification made by Ms. Amesoli at the preliminary hearing.

**{9}** Our review of the record reveals the following factual and procedural history relevant to this issue. After Ms. Amesoli identified Defendant at the preliminary hearing as the person she saw enter and remain in her neighbors' basement, Defendant filed a motion in district court to suppress any in-court identification at trial by Ms. Amesoli, in which he argued that the identification violated his right to due process. Specifically, Defendant argued that Ms. Amesoli did not know him and therefore could not identify him, and that and Ms. Amesoli was at no time given a photo lineup including other individuals prior to identifying him. Defendant also argued that Ms. Amesoli's identification of him at the preliminary hearing was prejudicial because, at the time she identified him, he was the only person wearing orange, he was in handcuffs and leg irons, and he was sitting next to an attorney. The district court denied the motion to suppress. In its oral comments at the hearing, the district court stated that Defendant had not raised a constitutional issue in his motion, and therefore, suppression was not required. The district court also stated that Defendant's issues related to Ms. Amesoli's credibility, which should be directed to the fact-finder at trial.

**{10}** We first note that, contrary to the district court's assertion at the hearing on the motion to suppress, Defendant did raise a constitutional issue in his motion to suppress because he argued, in essence, that he was subject to a suggestive pretrial identification procedure which violated his right to due process. *See State v. Ramirez*, 2018-NMSC-003, ¶¶ 30-33, 409 P.3d 902 (recognizing that, where law enforcement uses an identification procedure that is both suggestive and unnecessary, due process requires suppression of the identification); *see also State v. Johnson*, 2004-NMCA-058, ¶ 13, 135 N.M. 567, 92 P.3d 13 (stating that the reliability of an identification is a due process requirement).

**{11}** On appeal, Defendant continues to argue that the circumstances under which Ms. Amesoli identified him at the preliminary hearing gave rise to a substantial likelihood of misidentification at trial. Defendant argues that, because he was the only person wearing obvious prison attire and sitting next to an attorney when he was identified, the situation amounted to a "show-up identification," and the process was therefore inherently suggestive. We review the denial of a motion to suppress an in-court identification de novo. *See Ramirez*, 2018-NMSC-003, ¶ 29 (reviewing de novo the defendant's claim that the district court denied his right to due process by denying his motion to suppress an in-court identification); *State v. Belanger*, 2009-NMSC-025, ¶ 8, 146 N.M. 357, 210 P.3d 783 ("This appeal implicates . . . the Fourteenth Amendment right to due process of law, including the right to a fair trial, and therefore our review is de novo.").

**{12}** We begin by recognizing that "[s]how[-]up identifications are inherently suggestive and should be avoided." *Patterson v. LeMaster*, 2001-NMSC-013, ¶ 21, 130 NM 179, 21 P.3d 1032 (internal quotation marks and citation omitted). In considering

the admissibility of show-up identifications, "we analyze whether the procedure used was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification and, if so, whether the identification is nonetheless reliable under the totality of the circumstances." *Johnson*, 2004-NMCA-058, ¶ 13; *see State v. Baca*, 1983-NMSC-049, ¶ 18, 99 N.M. 754, 664 P.2d 360 (stating that the reliability is "the linchpin in determining the admissibility of identification testimony"). In *Patterson*, our Supreme Court enumerated several factors for us to consider in making this determination: (1) the opportunities the witness had to view the perpetrator at the time of the alleged crime; (2) the degree of attention paid by the witness; (3) the accuracy of the witness's description of the perpetrator; (4) the witness's level of certainty when identifying the defendant; and (5) the time between the alleged crime and the witness's identification of the defendant. *See* 2001-NMSC-013, ¶ 20.

**{13}**    For purposes of this appeal, we will presume, as Defendant contends, that the circumstances under which Ms. Amesoli identified Defendant at the preliminary hearing were akin to a show-up identification and were therefore inherently suggestive. *See State v. Padilla*, 1996-NMCA-072, ¶ 16, 122 N.M. 92, 920 P.2d 1046 (defining a show-up identification as one in which a witness gives a description of the suspect to police, the witness is then informed that the police have caught the suspect, the police bring the witness in contact with the suspect, and then police ask whether the witness can identify the suspect); *see also Patterson*, 2001-NMSC-013, ¶ 8 (describing a similar course of events as a show-up identification). The question is whether, applying the *Patterson* factors, there are sufficient indicia of reliability to outweigh the suggestive nature of the identification.

**{14}**    The first and second *Patterson* factors, the witness's opportunity to view the perpetrator and the degree of attention paid by the witness, weigh in favor of reliability in this case. Ms. Amesoli testified that she observed the two men through windows in her dining room and kitchen while they made various attempts to gain entry into her neighbors' residence. Ms. Amesoli testified that she saw them from a distance of around five feet, that her view was unobstructed, and that the events occurred in broad daylight. *See State v. Nolan*, 1979-NMCA-116, ¶ 19, 93 N.M. 472, 601 P.2d 442 (concluding that the identification of the defendant by the witness was reliable where the events occurred in a well-lighted store and the witness was able to view the perpetrator at close range); *cf. Johnson*, 2004-NMCA-058, ¶ 17-19 (determining that the first *Patterson* factor did not weigh in favor of reliability where the witnesses observed the suspects from distances of between 60 and 80 yards away). Additionally, Ms. Amesoli's testimony indicates that she was paying close attention to the two men during their attempt to break into her neighbors' home. Ms. Amesoli described to the magistrate court in detail what the men did from the time she saw them in front of her neighbors' home until the police responded to the scene. Specifically, Ms. Amesoli testified that she watched the men knocking on her neighbors' front door for several minutes, attempt to remove a screen from their dining room window, try to open the back door, open the basement door, check the garage, and return to the side of the house and then bring the removed screen into the backyard and stand by a tree.

**{15}** The third factor, Ms. Amesoli's level of certainty, also weighs in favor of reliability. Ms. Amesoli testified at the preliminary hearing that she was positive that Defendant was the man who entered and remained in her neighbors' basement, reiterating that she saw the man in broad daylight. With respect to the length of time between the crime and the identification factor, two weeks elapsed between the burglary and the preliminary hearing. Our Supreme Court has recognized that a one month passage of time between the crime and the identification will not necessarily render an identification unreliable, where the witness had sufficient opportunity to view the perpetrator and the witness's attention is focused. For the reasons already stated, these conditions were present in this case, and we therefore weigh this factor in favor of reliability. *See State v. Stampley*, 1999-NMSC-027, ¶ 29, 127 N.M. 426, 982 P.2d 477 ("A one-month lapse of time is not unreasonable, particularly under these circumstances where the witnesses had an opportunity to view the shooter and where their attention at the time was focused directly on the shooter.").

**{16}** With respect to the accuracy of Ms. Amesoli's description, the police report indicates that Ms. Amesoli described both men as bald with tattoos on their necks and heads. Ms. Amesoli also told police that one of the men was wearing a red jersey. At the preliminary hearing, Ms. Amesoli testified that Defendant was the man who had been wearing the red jersey. Defendant does not contest the accuracy of this description except to argue that it is too vague to support a finding of reliability. Defendant also argues that when he was arrested he was not wearing a red jersey. In support of this contention, Defendant pointed to the evidence receipt from the Gallup Police Department corresponding to Defendant's arrest, which lists a blue jersey.

**{17}** We first note that the fact that the evidence receipt lists a blue jersey does not mean that Ms. Amesoli's description of the jersey as red was inaccurate. However, even weighing this factor neutrally or against reliability, on balance, application of the other *Patterson* factors indicates that there were sufficient indicia of reliability to outweigh any suggestiveness resulting from the circumstances of the identification at the preliminary hearing, and the district court therefore did not err in allowing the in-court identification of Defendant. *See Stampley*, 1999-NMSC-027, ¶¶ 23-29 (determining that in-court identifications of the defendant were admissible where all the *Patterson* factors weighed in favor of reliability); *cf. State v. Combs*, 2011-NMCA-107, ¶ 15, 150 N.M. 766, 266 P.3d 635 (determining that where two *Patterson* factors weighed neutrally, one weighed in favor of reliability, and two weighed against reliability, the district court erred in denying the defendant's motion to suppress the in-court identifications); *see also State v. Jacobs*, 2000-NMSC-026, ¶ 30, 129 N.M. 448, 10 P.3d 127 ("An in-court identification which is independent of, and not tainted by, the out-of-court identification is admissible.").

**{18}** Because the in-court identification of Defendant was admissible, Defendant's arguments regarding the credibility of Ms. Amesoli's identification were for the jury to decide, and our review of the record indicates that Defendant was afforded the opportunity to question Ms. Amesoli and the police witnesses regarding the accuracy of her identification of Defendant. *See State v. Cheadle*, 1983-NMSC-093, ¶ 15, 101 N.M.

282, 681 P.2d 708 ("Once a court finds that the evidence is admissible, it becomes a jury determination as to the accuracy of a witness'[s] identification."), *overruled on other grounds by Belanger*, 2009-NMSC-025, ¶ 36.

## C.    Ineffective Assistance of Counsel

**{19}**    Defendant argues that he received ineffective assistance of counsel in this matter. "We review claims of ineffective assistance of counsel de novo." *State v. Dylan J.*, 2009-NMCA-027, ¶ 33, 145 N.M. 719, 204 P.3d 44. In order to establish a prima facie case of ineffective assistance, a defendant must first "show that counsel's performance fell below that of a reasonably competent attorney[.]" *State v. Hester*, 1999-NMSC-020, ¶ 9, 127 N.M. 218, 979 P.2d 729. Second, a defendant must show that counsel's deficient performance prejudiced the defense "such that there was a reasonable probability that the outcome of the trial would have been different." *State v. Hobbs*, 2016-NMCA-006, ¶ 21, 363 P.3d 1259 (internal quotation marks and citation omitted). The burden is on the defendant to show both incompetence and prejudice. *State v. Grogan*, 2007-NMSC-039, ¶ 11, 142 N.M. 107, 163 P.3d 494.

**{20}**    Defendant first argues that his counsel was ineffective for failing to object to the suggestive identification procedure at the preliminary hearing and by stating to the district court that Defendant's pro se motion to suppress the identification was without merit. For the reasons discussed above, Ms. Amesoli's in-court identification was sufficiently reliable despite any suggestiveness occasioned by the circumstances at the preliminary hearing. Therefore, we cannot say that Defendant was prejudiced by counsel's failure to object to the identification procedure. *See State v. Nguyen*, 2008-NMCA-073, ¶ 29, 144 N.M. 197, 185 P.3d 368 (recognizing that without a showing of prejudice, a claim for ineffective assistance of counsel fails).

**{21}**    Defendant also argues that counsel was ineffective for failing to argue the motion to suppress and leaving Defendant to raise the issue pro se. While we acknowledge that an attorney's failure to challenge an identification on grounds that it was suggestive can, in some cases, constitute ineffective assistance of counsel, in this case a motion to suppress was made, and we have determined that the motion was properly denied. *See Patterson*, 2001-NMSC-013, ¶ 34 (holding that defense counsel's failure to challenge a suggestive show-up identification was ineffective). Defendant has not demonstrated, nor does the record suggest, that the motion to suppress would have been successful had counsel argued it instead of Defendant. *See State v. Contreras*, 2007-NMCA-045, ¶ 28, 141 N.M. 434, 156 P.3d 725 (stating that where the defendant fails to make a showing that the result of the proceedings would have been different but for counsel's errors, the presumption of effective assistance of counsel controls).

**{22}**    Additionally, while we cannot readily conceive of a legitimate reason for counsel to tell the district court that he believed Defendant's motion to suppress was without merit, as discussed, Ms. Amesoli's identification of Defendant was properly admitted. Moreover, at the time defense counsel told the district court that he believed that the motion to suppress lacked merit, the district court had already denied the motion.

Accordingly, the record does not establish that the result of the proceeding would have been different had counsel not made this statement, and therefore, we perceive no prejudice to Defendant resulting from the statement. *See State v. Crocco*, 2014-NMSC-016, ¶ 24, 327 P.3d 1068 (concluding that the defendant failed to make a prima facie showing of ineffectiveness where the motion to suppress was without merit); *State v. Martinez*, 2007-NMCA-160, ¶ 19, 143 N.M. 96, 173 P.3d 18 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, we need not consider whether counsel's performance was deficient.").

**{23}** Defendant next asserts that his attorney was not prepared for trial and failed to challenge a juror that he knew for cause; however these claims are not supported by the record, and therefore do not establish a prima facie case of deficient performance. *See State v. Cordova*, 2014-NMCA-081, ¶ 10, 331 P.3d 980 ("A general claim of failure to investigate is not sufficient to establish a prima facie case if there is no evidence in the record indicating what information would have been discovered."). Additionally, the record does not establish that the results of the proceedings would have been different had defense counsel challenged the juror for cause. *See Martinez*, 2007-NMCA-160, ¶¶ 22-24 (requiring that an ineffective assistance claim be supported by a showing of how counsel's performance prejudiced the defense).

**{24}** Defendant also argues that his counsel was ineffective for conceding to the jury that Defendant was at the home but arguing that Defendant's conduct did not amount to a burglary. However, this appears to be a matter of trial strategy, which we will not second-guess. *See Lytle v. Jordan*, 2001-NMSC-016, ¶ 26, 130 N.M. 198, 22 P.3d 666 (stating that a prima facie case of ineffective assistance of counsel will not be found where there is a plausible, rational strategy, or tactic to explain trial counsel's conduct); *see also State v. Lewis*, 1986-NMCA-090, ¶ 21, 104 N.M. 677, 726 P.2d 354 (stating the defense counsel is not required to present a defense that is not warranted by demonstrable facts).

**{25}** We therefore conclude that Defendant has not established a prima facie case of ineffective assistance of counsel. *See Jacobs*, 2000-NMSC-026, ¶ 51 (stating that failure to prove either prong of the test defeats a claim of ineffective assistance of counsel). We note however, that Defendant may pursue his claims of ineffective assistance of counsel through habeas corpus proceedings. *See Hobbs*, 2016-NMCA-006, ¶¶ 19, 23 (stating that there is a preference for habeas corpus proceedings as the avenue for adjudicating ineffective assistance of counsel claims, especially when the record fails to establish a prima facie case).

## D.    Magistrate Court Bind Over

**{26}** Defendant argues that the district court erred in denying his motion to dismiss on the basis that he was denied due process when he was bound over from magistrate court on a charge of aggravated burglary, but the State ultimately filed an amended criminal information in district court charging simple burglary.

**{27}**    We understand the facts relevant to this issue as follows. Defendant was originally charged in magistrate court with aggravated burglary, possession of a firearm by a felon, and possession of drug paraphernalia. At the probable cause hearing before the magistrate court, the State conceded that it had not presented enough evidence to bind Defendant over on aggravated burglary, and asked the magistrate court to bind Defendant over on the lesser-included offense of burglary. The magistrate court then, without specifically stating the charge, said "based on the testimony that was given to this court, the defendant will be [bound] over to district court." The district attorney then stated, "Just to make it clear, Judge, that's just on the residential burglary, correct? . . . Not aggravated burglary, just residential burglary." The recording of the preliminary hearing does not contain an audible response from the magistrate court. However, defense counsel then asked to be heard on the issue of conditions of release and said, "Your Honor, since the only charge that [Defendant] is being bound over on is the residential burglary charge, which is much less than the original charges, we'd ask the court to consider releasing [Defendant] on pretrial supervision pending district court arraignment."

**{28}**    The ensuing written order entered by the magistrate court bound Defendant over to the district court on a charge of aggravated burglary. Defendant then filed a motion to dismiss in district court, contending that he was denied due process because the State had bound him over on aggravated burglary, a charge that had been dismissed by the magistrate court, and failed to charge him with simple burglary. The State responded to the motion by filing an amended criminal complaint charging Defendant with simple burglary.

**{29}**    On appeal, Defendant continues to argue that, as a result of these events, he was denied his right to due process. Defendant relies on *State v. Rodriguez*, in which this Court held that the State deprived the defendant of due process when it charged him in district court with an offense not considered or included in the magistrate court bind over. 2009-NMCA-090, ¶ 13, 146 N.M. 824, 215 P.3d 762. In *Rodriguez*, the defendant was originally charged in magistrate court on a misdemeanor charge of possession of a controlled substance. *Id.* ¶ 3. The magistrate court bound the defendant over on misdemeanor possession, but the criminal information subsequently filed in district court altered the charge to felony possession of a controlled substance. *Id.* ¶¶ 3-4. We held that the defendant was denied due process because the charge contained in the criminal information was completely new, and therefore, no probable cause determination on that charge had been made by the magistrate court. *Id.* ¶ 13. We concluded therefore, that, since the defendant was never afforded a probable cause determination on felony drug possession, he was denied due process. *Id.*; *see* NM Const, art. II, § 14 (stating that no person shall be held on information without having had a preliminary examination before an examining magistrate or waiving such an examination); *see also State v. Coates*, 1985-NMSC-091, ¶ 7, 103 N.M. 353, 707 P.2d 1163 (recognizing that Article II, Section 14 mandates that a defendant cannot be held to answer for trial unless a preliminary hearing is held at which time he is informed of the crime charged against him and a magistrate determines that probable cause exists),

*abrogated on other grounds as stated in State v. Brule*, 1999-NMSC-026, ¶ 3, 127 N.M. 368, 981 P.2d 782.

**{30}** Unlike in *Rodriguez,* here Defendant was informed of the burglary charge at the preliminary hearing, and the record indicates that the magistrate court judge determined that probable cause existed to bind Defendant over on that charge. Moreover, simple burglary is a lesser-included offense of aggravated burglary. *See State v. Davis*, 2009-NMCA-067, ¶ 9, 146 N.M. 550, 212 P.3d 438 (stating that a crime is a lesser-included offense when, under the statutory elements, the defendant could not have committed the greater offense without also committing the lesser offense), *abrogated on other grounds by State v. Montoya*, 2015-NMSC-010, ¶¶ 38, 69, 345 P.3d 1056; *see also* § 30-16-3 (elements of burglary); NMSA 1978, § 30-16-4 (1963) (elements of aggravated burglary). As our Supreme Court recognized in *State v. Collier*, 2013-NMSC-015, ¶ 35, 301 P.3d 370, "notice of a criminal charge necessarily includes notice of any lesser[-]included offenses." *See also Davis*, 2009-NMCA-067, ¶ 9 ("A defendant is considered to be on notice to defend against uncharged lesser-included offenses.").

**{31}** Accordingly, the record is sufficient to show that Defendant had notice at the outset of the preliminary hearing that he faced a charge of simple burglary, and the record is also sufficient to establish that the magistrate court made the required probable cause determination on that charge. Nothing before us suggests that the failure of the written bind-over order to reflect the charge of simple burglary was due to anything other than a clerical error on the part of the magistrate court. Under these circumstances, we reject Defendant's argument that he was denied due process by the variance between the bind-over order and the State's amended criminal information. *See Coates*, 1985-NMSC-091, ¶¶ 9-10 (holding that an amended criminal information that added charges previously omitted in the bind-over order was valid, where the review of the preliminary hearing revealed that the magistrate court heard evidence on multiple counts, announced that it was binding the defendant over on those counts, but several counts were omitted from the bind-over order due to a clerical error).

## E.    Trial Court's Failure to Excuse a Juror for Cause

**{32}** During voir dire, a prospective juror indicated that she knew the McKinley County District Attorney's wife as a friend and former co-worker. The prospective juror also stated that her shed had recently been burglarized, that her daughter was an attorney, and that through her job as a teacher, she had witnessed the negative impact that drugs can have on students. Based on this, defense counsel moved to excuse the prospective juror for cause, and the district court denied the motion. Defendant argues that this was error.

**{33}** "We review rulings on challenges for cause under an abuse of discretion standard." *State v. Gardner*, 2003-NMCA-107, ¶ 16, 134 N.M. 294, 76 P.3d 47. This is because the district court "is in the best position to assess a juror's state of mind, by taking into consideration the juror's demeanor and credibility." *State v. Clark*, 1999-NMSC-035, ¶ 10, 128 N.M. 119, 990 P.2d 793. "The challenging party bears the burden

of proving juror bias." *State v. Johnson*, 2010-NMSC-016, ¶ 31, 148 N.M. 50, 229 P.3d 523.

**{34}** We have recognized that "[t]he [district] court properly excludes a juror for cause where the juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Gardner*, 2003-NMCA-107, ¶ 16 (internal quotation marks and citation omitted). We see nothing in the juror's responses to indicate that she could not be impartial. The fact that the juror's daughter is an attorney and that the juror has experience with the negative impact of drugs do not appear to have any relevance to the juror's ability to decide the case impartially, nor does this imply a prejudice against Defendant or a bias in favor of the State. Defendant also offers no explanation regarding why these circumstances would require that the juror be excused. Further, while the juror's friendship with the district attorney's wife and the fact that her shed had been burglarized might conceivably imply some bias, the juror affirmatively stated that she would be impartial. Defendant does not direct us to any point during voir dire that would indicate otherwise. Under these circumstances, we see no basis to conclude that the district court abused its discretion in refusing to excuse the juror for cause, and we therefore reject this assertion of error. *See State v. Baca*, 1990-NMCA-123, ¶¶ 8, 21, 111 N.M. 270, 804 P.2d 1089 (finding no abuse of discretion in the district court's denial of a request to excuse a juror for cause where the juror indicated she could render a fair and impartial verdict, free from any bias, even though the juror initially "stated she was inclined to sympathize with the [S]tate" and that she was a crime victim).

## CONCLUSION

**{35}** For these reasons, we affirm Defendant's conviction for burglary.

**{36}** **IT IS SO ORDERED.**

**JULIE J. VARGAS, Judge**

**WE CONCUR:**

**M. MONICA ZAMORA, Judge**

**JACQUELINE R. MEDINA, Judge**